GRUNENTHAL *v.* LONG ISLAND RAIL ROAD CO.

No. 35. Argued October 24, 1968.—Decided November 18, 1968.

*Milford J. Meyer* argued the cause for petitioner. With him on the briefs was *Irving Younger.*

*Daniel M. Gribbon* argued the cause for respondent. On the brief was *Paul F. McArdle.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

Petitioner was working for respondent as foreman of a track gang when a 300-pound railroad tie being lifted by the gang fell and severely crushed his right foot. He sued respondent for damages under the Federal Employers' Liability Act, 35 Stat. 65, as amended, 45 U. S. C. § 51 *et seq.,* and a jury in the District Court for the

Southern District of New York awarded him $305,000.[1] The trial judge denied the railroad's motion to set the award aside as excessive. The railroad appealed the denial to the Court of Appeals for the Second Circuit, and that court, one judge dissenting, ordered the District Court to grant the railroad a new trial unless the petitioner would agree to remit $105,000 of the award. 388 F. 2d 480 (1968). We granted certiorari, 391 U. S. 902 (1968).[2] We reverse.

Petitioner argues that the Court of Appeals exceeded its appellate powers in reviewing the denial of the railroad's motion, either because such review is constitutionally precluded by the provision of the Seventh Amendment that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law," [3] or

[1] Petitioner's complaint sought damages of $250,000. This was amended with leave of the trial judge to $305,000 after the jury returned its verdict in that amount.

[2] The Court of Appeals rejected the railroad's grounds of appeal addressed to liability and to the dismissal of a third-party claim of the railroad against the contracting company which furnished a boom truck used by the track gang. None of those questions was brought here.

[3] All 11 courts of appeals have held that nothing in the Seventh Amendment precludes appellate review of the trial judge's denial of a motion to set aside an award as excessive. *Boyle* v. *Bond,* 88 U. S. App. D. C. 178, 187 F. 2d 362 (1951); *Compania Trasatlantica Espanola, S. A.* v. *Melendez Torres,* 358 F. 2d 209 (C. A. 1st Cir. 1966); *Dagnello* v. *Long Island R. Co.,* 289 F. 2d 797 (C. A. 2d Cir. 1961); *Russell* v. *Monongahela R. Co.,* 262 F. 2d 349, 352 (C. A. 3d Cir. 1958); *Virginian R. Co.* v. *Armentrout,* 166 F. 2d 400 (C. A. 4th Cir. 1948); *Glazer* v. *Glazer,* 374 F. 2d 390 (C. A. 5th Cir. 1967); *Gault* v. *Poor Sisters of St. Frances,* 375 F. 2d 539, 547–548 (C. A. 6th Cir. 1967); *Bucher* v. *Krause,* 200 F. 2d 576, 586–587 (C. A. 7th Cir. 1952); *Bankers Life & Cas. Co.* v. *Kirtley,* 307 F. 2d 418 (C. A. 8th Cir. 1962); *Covey Gas & Oil Co.* v. *Checketts,* 187 F. 2d 561 (C. A. 9th Cir. 1951); *Barnes* v. *Smith,* 305 F. 2d 226, 228 (C. A. 10th Cir. 1962).

because such review is prohibited by the Federal Employers' Liability Act itself. We have no occasion in this case to consider that argument, for assuming, without deciding, that the Court of Appeals was empowered to review the denial and invoked the correct standard of review, the action of the trial judge, as we view the evidence, should not have been disturbed. See *Neese* v. *Southern R. Co.*, 350 U. S. 77 (1955).

The trial judge filed an unreported opinion.█ He considered that in deciding the railroad's motion he "must indulge . . . in a fairly accurate estimate of factors to which the jury gave attention, and favorable response, in order to arrive at the verdict announced." He concluded that the motion should be denied because, applying that standard, the relevant evidence weighed heavily in favor of the jury's assessment. His instructions to the jury had limited the items of damages to wages lost before trial, compensation for loss of future earnings, and past and continuing pain and suffering. His opinion detailed the items of evidence which, in his view, were sufficient to support the jury in finding that (1) wages lost before trial amounted to approximately $27,000, (2) loss of future wages based on petitioner's present salary of $6,000 per annum plus likely increases over a life expectancy of 27.5 years would amount to $150,000 present value, and (3) "an amount approaching $150,000 [would be appropriate] for plaintiff's pain and suffering—past and future." The judge conceded that the aggregate award seemed generous, but he concluded nevertheless that it was "not generous to a fault or outside the bounds of legal appropriateness." He emphasized that "the trial record here has many unusual features, the most outstanding one being the non-controversial nature of the defense as to damages. The jury, impressed by the

uncontroverted proof adduced by plaintiff, may well have adopted *in toto* its full significance and drawn such normal and natural inferences therefrom as the law endorses."

The Court of Appeals regarded its inquiry as limited to determining whether the trial judge abused his discretion in denying the railroad's motion. Its guide for that determination, the court stated, was the standard of review announced in its earlier decision in *Dagnello* v. *Long Island R. Co.,* 289 F. 2d 797, 806 (1961): "[W]e appellate judges [are] not to decide whether we would have set aside the verdict if we were presiding at the trial, but whether the amount is so high that it would be a denial of justice to permit it to stand. We must give the benefit of every doubt to the judgment of the trial judge; but surely there must be an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a question of law." [4]

We read *Dagnello,* however, as requiring the Court of Appeals in applying this standard to make a detailed appraisal of the evidence bearing on damages. Indeed this re-examination led to the conclusion in *Dagnello* that it was not a denial of justice to permit the jury's award to stand. If the Court of Appeals made a similar appraisal of the evidence in this case, the details are not disclosed in the majority opinion. Beyond attaching unexplained significance to petitioner's failure in his complaint "to ask for damages in such a large sum as $305,000," the relevant discussion is limited to the bald statement that "giving Grunenthal the benefit of

---

[4] The standard has been variously phrased: "Common phrases are such as: 'grossly excessive,' 'inordinate,' 'shocking to the judicial conscience,' 'outrageously excessive,' 'so large as to shock the conscience of the court,' 'monstrous,' and many others." *Dagnello* v. *Long Island R. Co., supra,* at 802.

every doubt, and weighing the evidence precisely in the same manner as we did in *Dagnello* . . . we cannot in any rational manner consistent with the evidence arrive at a sum in excess of $200,000." 388 F. 2d, at 484. We have therefore made our own independent appraisal of the evidence. We conclude that the trial judge did not abuse his discretion in finding "nothing untoward, inordinate, unreasonable or outrageous—nothing indicative of a runaway jury or one that lost its head."

The liability and damage issues were tried separately before the same jury. The evidence at the trial on damages consisted of stipulated hospital and employment records, a stipulation that petitioner's life expectancy was 27.5 years, and the oral testimony of the petitioner, his medical expert, and an official of his railroad union. The railroad offered no witnesses.

Petitioner was 41 years of age at the time of his injury and had been in the railroad's employ for over 20 years. The railroad concedes in its brief that he was earning approximately $6,000 annually and that the jury could properly find that he was entitled to $27,000 for wages already lost over the four and one-half year period between injury and judgment. The railroad further concedes that an award of $100,000 for loss of future wages would not be improper, this on the premise that invested in federal securities that sum would realize $6,000 annually. The trial judge on the other hand appraised the evidence on future earnings as sufficient to support an award of $150,000 for loss of future wages in light of the "convincing testimony not refuted . . . demonstrating the steady wage increases in recent time for work equivalent to that rendered by plaintiff, and the strong likelihood that similar increases would continue."

We cannot say that the trial judge's view that the jury might properly have awarded $150,000 for loss of future earnings is without support in the evidence. The judge

had instructed the jury without objection from the railroad that it was free to find on the evidence that the injury so disabled the petitioner "that it in effect closed out his working career." Although petitioner's medical witness testified that the condition of his foot would not prevent petitioner from engaging in "sedentary work," petitioner's unchallenged evidence of his unsuccessful efforts to obtain and keep jobs of that kind might reasonably have led the jury to decide that petitioner's chances of obtaining or holding any employment were most doubtful. Petitioner testified that his applications for work had often been turned down: "[W]hen they found out I had a bad foot they wouldn't take a chance." On one occasion when he obtained employment as a salesman during the Christmas rush, "I worked there for about four or five days but I couldn't stand it." Moreover, the railroad refused to employ him for any kind of work when he failed a medical examination given him by a railroad physician; after being told, "You failed the medical and we can't take you back," petitioner said he began receiving a "disability pension from the railroad."

Since the jury's award for lost future earnings may properly have been as high as $150,000, its award for pain and suffering might have been as low as $128,000 rather than the $150,000 deemed permissible by the trial judge. In any event we cannot say that the trial judge's opinion that the jury might have awarded the higher $150,000 amount is without support in the record. Petitioner's injury caused his hospitalization at five different times over a period of less than two years. His foot was so badly crushed that serious infection developed. The wounds did not heal properly and skin grafts were made from his right thigh about a year after his injury. Several months later gangrene set in and his doctors were concerned that the "foot was about to die." A

sympathectomy was performed, consisting of an incision of the abdomen to reach the spinal column and the sympathetic ganglia along the spine "to remove [the] controls which maintain the closing down of the blood vessels." This operation was successful but six months later petitioner was forced to submit to yet another operation to remove a piece of bone over the ball of the great toe. Petitioner's medical witness testified that there is still a hazard of more surgery because "this is just a mess of bones"—"the metatarsal has been completely crushed"—"the joint is completely lost"—"the overall black appearance of the bone"—"indicates decalcification or demineralization"—"the nourishment to the foot is so bad that the skin shows the unhealthy condition of the foot." Petitioner testified that "I always have a pain, it is like a dull toothache, to this day," and that "I just take it for granted now. It doesn't bother me now." The jury might well have concluded that petitioner suffered and would continue to suffer great pain, although he had learned to live with it. As Judge Hays noted, 388 F. 2d, at 485, the trial judge referred to "the total absence of exaggeration" in petitioner's testimony describing "the excruciating physical pain and mental anguish" he had endured since the accident. "On the record here," said the trial judge, "[the jury] had good and sufficient reason to regard and assess [the plaintiff's pain and suffering—past and future] as excruciating, deep-seated, unrelenting and debilitating—the inducing cause of his constant misery."

We therefore conclude that the action of the trial judge should not have been disturbed by the Court of Appeals.

The judgment of the Court of Appeals is reversed and the case is remanded to that court with direction to enter a judgment affirming the judgment of the District Court.

*It is so ordered.*

MR. JUSTICE HARLAN, dissenting.

I think it clear that the only issue which might conceivably justify the presence of this case in this Court is whether a United States Court of Appeals may constitutionally review the refusal of a district court to set aside a verdict for excessiveness. The Court purports not to decide that question, preferring to rest its decision upon the alleged correctness of the District Court's action in the circumstances of this case. Like my Brother STEWART, I am at an utter loss to understand how the Court manages to review the District Court's decision and find it proper while at the same time proclaiming that it has avoided decision of the issue whether appellate courts ever may review such actions.

Even assuming that this feat of legal gymnastics has been successfully performed, I believe that the correctness of this particular District Court decision, a matter whose proper resolution depends upon a detailed examination of the trial record and which possesses little if any general significance, is not a suitable issue for this Court. Accordingly, I think it appropriate to vote to dismiss the writ as improvidently granted, even though the case formally is here on an unlimited writ. See my dissenting opinion in *Protective Committee* v. *Anderson,* 390 U. S. 414, 454 (1968). To the extent that this position is inconsistent with my having joined the *per curiam* opinion in *Neese* v. *Southern R. Co.,* 350 U. S. 77 (1955), in which the Court adopted a course similar to that followed today, I feel bound frankly to say that the incongruity of today's decision brings me face-to-face with the question whether that earlier disposition was correct, and that I now believe it to have been wrong.*

---

*I feel entitled to state, by way of partial confession and avoidance of my action in *Neese,* that the writ in *Neese* was granted before I took my seat on the Court. See 348 U. S. ix, and 950 (1955).

Since the Court professes not to reach the constitutional issue in this case, I consider it inappropriate for me, as an individual Justice, to express my opinion on it.

MR. JUSTICE STEWART, dissenting.

The Court professes not to consider the petitioner's argument that the Seventh Amendment and "the Federal Employers' Liability Act itself" prohibit judicial review of a district judge's order refusing to set aside a verdict as excessive. Yet by the very act of proceeding to review the district judge's order in this case, the Court necessarily, and I think quite correctly, completely rejects that argument. I fully agree with the Court and with the 11 courts of appeals that "nothing in the Seventh Amendment [or in the FELA] precludes appellate review of the trial judge's denial of a motion to set aside an award as excessive." *

In *Dagnello* v. *Long Island R. Co.*, 289 F. 2d 797, the Court of Appeals for the Second Circuit, in a thorough and carefully considered opinion written by Judge Medina, articulated the standard to be followed by that court in reviewing a trial judge's refusal to set aside a verdict as excessive:

> "If we reverse, it must be because of an abuse of discretion. If the question of excessiveness is close or in balance, we must affirm. The very nature of the problem counsels restraint. Just as the trial judge is not called upon to say whether the amount is higher than he personally would have awarded, so are we appellate judges not to decide whether we would have set aside the verdict if we were presiding at the trial, but whether the amount is so high that it would be a denial of justice to permit it to stand. We must give the benefit of every

*See *ante*, at 157, n. 3.

doubt to the judgment of the trial judge; but surely there must be an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a question of law. . . ." *Id.,* at 806.

I believe this standard of judicial review is the correct one and can think of no better way to verbalize it.

In the present case Judge Medina again wrote the prevailing opinion. This Court criticizes that opinion for not setting out "a detailed appraisal of the evidence bearing on damages." But the Court of Appeals devoted several paragraphs to a review of all the relevant particulars of the petitioner's financial loss and physical injuries, concluding its discussion of the evidence with the following passage:

"[G]iving Grunenthal the benefit of every doubt, and weighing the evidence precisely in the same manner as we did in *Dagnello,* where the large sum allowed was found not to be excessive, we cannot in any rational manner consistent with the evidence arrive at a sum in excess of $200,000." 388 F. 2d 480, 484.

While it is arguable that a fuller written factual discussion might have been in order, I can find no reason to suppose that the Court of Appeals did not apply the standard of judicial review that it said it was applying— the standard of the *Dagnello* case. Since I believe that standard to be the correct one, and since I further believe that review of issues of this kind in individualized personal injury cases should be left primarily to the courts of appeals, I would affirm the judgment.