Irving Younger, J.
This complicated maritime tort case involved at the outset four parties and nine claims, cross claims, counterclaims, and claims over. Dismissals and withdrawals occurred during trial, so that at the end there were three parties, one claim, and one claim over. The case went to the jury on seven written questions, which the jury answered clearly and coherently. In sum, they found in plaintiff’s favor on liability and fixed his damages at $2,000.
It had been obvious to all that plaintiff expected his recovery to reach the jurisdictional limit of the court. Not surprisingly, then, he moved to set the verdict aside as inadequate.
Most of the learning on the boundaries of damages has developed in connection with verdicts attacked as excessive. That kind of case does not differ in principle from this. The logic of excessiveness should match the logic of inadequacy, just as the arithmetic of positive numbers matches the arithmetic of negative numbers.
So one turns to the cases, hoping to find in them a well-marked path through the perplexities of the subject. One is disappointed. The cases go no further than to say that the verdict should be disturbed only if it is “ grossly excessive,” “ grossly inadequate,” “inordinate,” “shocking to the conscience,” “ outrageous,” or “ monstrous.” (See, e.g., Grunenthal v. Long Is. R. R. Co., 393 U. S. 156 [1968]; Boudreau v. Damas Food Mart Corp., 52 Misc 2d 930 [mem. App. Term, 1st Dept, 1966].) Gilded words these, yet they hardly satisfy the passion for rationality which, as much as the passion to do the right thing, ought to inform judicial practice. They hardly guide a Trial *990 Judge’s hand to the precise, delicate, and orderly dissection of a verdict.
Accordingly, in this opinion I have tried to find a way to decide plaintiff’s motion, not simply by asking my psyche whether the verdict is “shocking,” “outrageous,” or “monstrous,” but rather by pursuing some more-or-less intelligible course to a conclusion.
First. What were the issues tendered by plaintiff in aggravation of damages?
In this case, there were seven:
(1) Plaintiff incurred a bill for medical services in the sum of $148.25.
(2) Plaintiff could not engage in his regular work as a longshoreman for five weeks after the accident, as a result of which he lost wages in the sum of $525.
(3) Plaintiff was unable to work for an additional six weeks intermittently over the next nine months, as a result of which he lost wages in the sum of $630.
(4) Plaintiff was obliged to give up his job as a seniór longshoreman and take up a new job as a junior checker.
(5) Plaintiff suffered permanent scarring of the lower left leg.
(6) Plaintiff suffered a permanent functional impairment of the left leg, estimated as a 7%% disability.
(7) Pain and suffering.
Second. What were the matters tendered by defendant in diminution of damages?
In this case, keyed to the issues raised by plaintiff, they were as follows :
(1) No substantial dispute.
(2) No substantial dispute.
(3) Through cross-examination of plaintiff, defendant raised the possibility that plaintiff did not work during these weeks because of a longshoreman’s strike, not because of plaintiff’s injuries.
(4) Again through cross-examination of plaintiff, defendant raised the possibility that a checker’s job is more desirable than a longshoreman’s, and that, in any event, plaintiff’s wages as a checker were about the same as his longshoreman’s wages.
(5) The fact of scarring was not substantially disputed. Defendant argued, however, that the scarring was minor and, considering its location along plaintiff’s left shin and the customs of male costuming, of no significant cosmetic effect.
(6) Defendant adduced medical testimony to the effect that there was no functional impairment whatever.
*991 (7) No substantial dispute.
Third. How did the jury decide these issues?
One of the hypotheses on which depends the intellectual respectability of our litigation system is that the jury acts for the most part rationally rather than emotionally. This hypothesis applies to damages as well as to liability. Hence a Judge commonly charges a jury that, in the last analysis, the determination of damages is left to their collective good judgment. (E.g., De Luca v. Wells, 58 Misc 2d 878 [Sup. Ct., Rensselaer County, 1968].) The word “judgment” connotes reason, not emotion.
In assessing a jury’s verdict, therefore, the Judge should assume that the jury resolved every disputed issue in a manner logically consistent with their verdict. Where damages are attacked as excessive, this means that every disputed issue with respect to damages is deemed to have been resolved in plaintiff’s favor. Where damages are attacked as inadequate, this means the obverse. Here, then, issues numbered (3), (4), (5) (in part), and (6) must be deemed to have been resolved in defendant’s favor. Plaintiff is left with issues numbered (1), (2), (5) (in part), and (7). To recapitulate them: a medical bill of $148.25, lost wages of $525, insignificant scarring, and pain and suffering.
Fourth. Is there some intelligent nexus between the verdict and the issues as the jury must be deemed to have resolved them?
In this case, I find four, each of which seems to me to bespeak the application of the rational faculties.
(a) The jury multiplied the special damages ($675) by three in order to arrive at a total verdict, including the scars and the pain and suffering, of $2,000.
(b) The jury multiplied the medical bill ($150) by 10 and to the product added the lost earnings in order to arrive at a total verdict, including the scars and the pain and suffering, of $2,000.
(c) The jury determined that the monetary equivalent of the scars and the pain and suffering was some $1,300, to which they added the special damages, thus arriving at a total verdict of $2,000.
(d) The jury surmised that approximately one third of its verdict (i.e., $700) would be payable to plaintiff’s counsel as his fee; to this they added another $700 as compensation for the scars and the pain and suffering and a final $600, the approximate amount of the special damages, thus arriving at a total verdict of $2,000. (I am well aware that in this and in most *992 cases the amount of plaintiff’s counsel fees is not a proper element of damages. A few minutes spent rearranging the numbers involved in the Grunenthal case, supra, lead one to suspect that, when a court assesses a verdict, it may, without fear of criticism, be influenced by the circumstance that a plaintiff’s net recovery is only about two thirds of the jury’s verdict.)
Needless to say, it is quite beside the point that I, as the jury, would have weighed the evidence differently and come to a different determination of damages. What is to the point is that the four benchmarks used here show ineluctably that the jury’s determination of damages was rational. That being so, I do not see how their verdict can fairly be described as “grossly inadequate,” “shocking to the conscience,” ‘ ‘ outrageous, ” or' “ monstrous. ’ ’
It follows that plaintiff’s motion to set the verdict aside must be denied.