**John Adams FUCHSTADT, Plaintiff-Appellee,**

**v.**

**UNITED STATES of America, Defendant-Appellant.**

**No. 661, Docket 35698.**

United States Court of Appeals, Second Circuit.

Argued March 25, 1971.

Decided April 20, 1971.

Lumbard, Chief Judge, concurred in part and dissented in part and filed an opinion.

---

Bernard Meyerson, Brooklyn, N. Y. (Moe Levine and Aaron J. Broder, New York City, on the brief), for plaintiff-appellee.

Alan B. Morrison, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and KAUFMAN and HAYS, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

This is the second part of what has become a serialized appeal in this traffic accident litigation removed from state into federal court under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. After a trial without a jury, Judge Cannella awarded Fuchstadt a judgment for damages against the United States in the amount of $150,000. The Government appealed both from the finding that its employee was solely at fault in causing the accident that resulted in plaintiff's injuries, and from the amount awarded.

In an opinion filed November 9, 1970, 434 F.2d 367, a panel of this court affirmed Judge Cannella's finding of liability. That issue is consequently not before us now. That panel, however, also decided that the district court did not comply with F.R.Civ.P. 52(a) because it failed to describe in sufficient detail the elements constituting the basis of plaintiff's damages. Accordingly, the cause was remanded to the district court for an appropriate itemization. The district court's attention was directed especially to the need to isolate the following components of the damage award:

> Plaintiff's actual expenditures for physicans and hospitalization attributable to the gall bladder operation; his loss of earnings, past and future; the estimated cost and type of future medical expenses likely to be incurred and thus includable in the award; and sums allowed for past and future pain and suffering.

In response to the panel's instructions, Judge Cannella on November 18, 1970, filed his memorandum setting forth a particularization of the basis for his award of damages in the sum of $150,-000. The Government continues to maintain on this second appeal that the judgment is excessive. Specifically, it challenges each aspect of Judge Cannella's itemization, with the exception of $1000 awarded for Fuchstadt's loss of enjoyment of bowling.

■ In this case we may disturb the district court's findings of damages if they are "clearly erroneous," F.R.Civ.P. 52(a). See Alexander v. Nash-Kelvinator Corp., 271 F.2d 524, 527 (2d Cir. 1959).[1]

Applying this standard here, we feel compelled to modify three items of special damages specified by Judge Cannella, namely those attributable to Fuchstadt's immediate and anticipated future medical expenses, and his loss of future earning capacity. Although we may have awarded different sums with respect to other damages itemized we are able to find support in the record for each of those findings.

## A. SPECIAL DAMAGES

### 1. *Immediate Medical Expenses*

Following his accident, Fuchstadt was confined for about six weeks to the Greenwich Hospital in Connecticut for treatment of his severely injured hip and other injuries resulting from the accident. About twelve days after he entered the hospital, plaintiff developed acute cholecystitis, which required the immediate surgical removal of his gall bladder. At trial, plaintiff attempted to show that the cholecystitis was caused by the automobile collision, but Judge Cannella found otherwise. That finding has not been put in issue here. In his decision of November 18, Judge Cannella held that the accident caused medical expenses to the plaintiff, consisting of hospital and doctor bills, totaling $4,702.50. But, the district court failed to comply with the mandate of the earlier panel decision of this court, requesting Judge Cannella to isolate the portion of Fuchstadt's medical expenses attributable to his cholecystitis and gall bladder operation. Since it would be extraordinarily wasteful of our judicial resources to re-mand this case to the district court for a second time, we feel compelled to make the allocation which the district judge should have made in the first instance at the trial, and failing that, upon the remand.

Included in the district court's allowance for medical expenses was a charge of $2,592.50 by the Greenwich Hospital and a $500 fee by Dr. Finn, one of two doctors who operated on plaintiff and who first treated Fuchstadt when he was admitted to the hospital. After an examination of the record we are convinced that a portion of each of these costs must be attributed to the gall bladder operation, which was unrelated to the accident and for which there can be no recovery.

■ Dr. Finn twice performed major surgery and provided related services for appellant, once to treat Fuchstadt's damaged hip and other injuries sustained in the collision, and later to remedy his cholecystitis. It is undisputed that Dr. Finn's unitemized bill for $500 included charges for both operations. Since the record does not show that surgery was more difficult or otherwise likely to have been more expensive in one or the other instance, we believe it reasonable in light of the record before us, to allocate one half of Dr. Finn's total fee of $500 to the gall bladder operation. Fuchstadt's recovery against the Government must accordingly be reduced by $250.

The Greenwich Hospital bill included an unitemized sum of $2,451.00 for Fuchstadt's six-week stay and $141 for out-patient treatment after he was discharged. A portion of the $2,451 charge must also be attributed to the gall bladder operation. Fuchstadt was admitted to the hospital on February 24, 1966. He developed symptoms of acute cholecystitis on March 8, 1966, and under-

---

1. We do not imply that the same standard applies to review of a trial judge's refusal to order a new trial, or direct a remittitur, on the ground that a jury award of damages is excessive. See Grunenthal v. Long Island R. R., 393 U.S. 156, 160, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968); Dagnello v. Long Island R. R., 289 F.2d 797, 806 (2 Cir., 1961).

went operative procedures for that ailment the following day. Hospital records reveal that the operation "was well tolerated" and that Fuchstadt "made a good post-operative recovery," a "Levine tube having been removed on March 12, 1966." For the duration of appellant's hospitalization, he was apparently given physical therapy for his damaged hip, but we are not aware of any post-operative treatment of substance for the gall bladder surgery beyond March 12. Thus, we conclude that the costs incurred during four of Fuchstadt's 41 days' hospitalization should be attributed to his intervening cholecystitis. Assuming that some minor additional treatment was related to the gall bladder operation, we will allocate somewhat more than ten percent of Fuchstadt's in-patient care at the hospital, or $300, to his cholecystitis, and will reduce the amount of his recovery against the Government by a like amount.

The award for medical expenses must be increased by $70. This charge incurred by Fuchstadt for the services of a Dr. Milland following his discharge from the hospital has been generously called to our attention by the Government as an item which the district court overlooked in making its award.

In sum, we find that the damages recoverable for Fuchstadt's immediate medical and hospital expenses should be $480 less than the amount calculated by the district court, or a total of $4,222.50.

### 2. *Immediate Loss of Wages*

The Government concedes that Fuchstadt lost $2,600 in wages as a result of his prolonged absence from work, a period of about four months, immediately following the accident. It contends, however, that Fuchstadt's return to his former employment was delayed by after-effects of his gall bladder operation. We disagree. The evidence well supports the conclusion that the gall bladder operation had no such long-range effects. Furthermore, it appears that the primary, if not the sole, reason for Fuchstadt's failure to return to employment sooner than he did was attributable to the requirement that he lift heavy machinery in his former job. The hip injury, not the gall bladder operation, permanently impaired Fuchstadt's ability to engage in strenuous activity. Thus, we find support in the record for the allocation of this item entirely to the accident.

### 3. *Future Loss of Earnings*

Judge Cannella found that after Fuchstadt returned to work, his deteriorated physical condition caused an average loss of wages in the amount of $20 per week. Since Fuchstadt was 61 at the time of the accident, the court apparently assumed that his remaining working life would be approximately four years, resulting in total lost future wages of $4,160.00.

Apparently the $20 per week sum represented the difference between Fuchstadt's hourly wage of $4.00 for his employment prior to the accident and his salary of $3.60 per hour earned later at Vernon Devices in New Rochelle, New York, where Fuchstadt commenced employment in August 1967. Assuming that Fuchstadt would average about forty hours of work per week, before and after the accident, the weekly wage loss would indeed amount to $20.00. Although there was other evidence in the record which Judge Cannella might have considered and which could have caused him to award lesser damages, we cannot say that this calculation of Fuchstadt's reduced earning capacity is without support or clearly erroneous.

However, the Government correctly observes that only approximately three, and not four years, remained between the date Fuchstadt left his former employment and his 65th birthday. Accordingly, the award of $4,160.00 for lost future earnings should be reduced by approximately one-fourth, or $1,040.00. We thus find Fuchstadt's lost future earning capacity to be $3,120.00.

### 4. *Future Medical Expenses*

■ Contrary to the Government's contention, the record supports the finding of the district court that Fuchstadt would most likely be required to undergo a future operation on his hip. The court's calculation, however, that the cost of this operation would be $12,500 is clearly erroneous. Dr. Finn first testified that the operation would cost between $10,000 and $15,000. But he later reduced this estimate to "seven or eight thousand dollars." In its post-trial memorandum, plaintiff asked for no more than this sum, $7,000–$8,000, for future medical expenses. We conclude that it is reasonable that Fuchstadt's anticipated future medical expenses will amount to approximately $7,500.

### B. PAIN AND SUFFERING

■ The brunt of the Government's attack on the district court's judgment is directed at its award of $125,000 for Fuchstadt's "past, present and future pain and suffering." We are of the view that this finding is not clearly erroneous. Prior to the accident, plaintiff was in excellent physical condition. He bowled five times a week and was the winner of several trophies; he lifted weights regularly; he walked a mile each day; and he preferred employment involving heavy, physical labor. Following the accident, and because of it, Fuchstadt was able to bowl only twice weekly and with a "handicap league." He cannot lift weights. He is unable to walk more than two or three blocks at one time. He can accept only light, assembly-line employment. While in the hospital, Fuchstadt experienced constant pain, slept very little, experienced recurrent headaches, and for a time was sustained by drains in an arm and in his nose. Appellant continues to experience constant pain in his leg and endures recurrent headaches. When he sleeps, he must lie on his right side and he is awakened by pain from time to time. Because plaintiff's face struck the windshield of his car during the accident, he lost almost all of his perfectly normal teeth. Fuchstadt's hip has by no means mended even after treatments. He now has "a square roughened up head of the femur operating in a poorly beaten up socket" which can be expected to deteriorate further. The record indicates that plaintiff will likely develop traumatic arthritis, whether or not he submits to further surgery. His left leg has been permanently shortened by almost an inch. Finally, he will continue to bear scars on his hip (eight inches), upper lip, chin, and forehead. This evidence of permanent physical debilitation and persistent pain adequately supports the district court's award.

For the reasons stated, we find that the district court's calculation of the damages, must be reduced by $6,520. Accordingly, the judgment of the district court will be modified to award judgment to the plaintiff in the amount of $143,480. As modified, the judgment is affirmed.

LUMBARD, Chief Judge (concurring in part and dissenting in part):

I agree with Judge Kaufman's award of a total of $18,442.50 for items for immediate and future medical expenses, immediate and future loss of wages, and loss of enjoyment of bowling instead of the sum which was awarded by the District Court for these items. However, in my opinion the award of the District Court for pain and suffering is grossly excessive. A most generous allowance would be $50,000.

According, I would modify the judgment of the District Court and direct entry of judgment in the total sum of $68,442.50.