George H. WEST, Jr., Appellee,

v.

RICHMOND, FREDERICKSBURG &
POTOMAC RAILROAD
COMPANY, Appellant.

No. 74–2063.

United States Court of Appeals,
Fourth Circuit.

Argued March 5, 1975.

Decided Oct. 16, 1975.

Samuel W. Hixon, III, and George R. Humrickhouse, Richmond, Va. (David R. Johnson and Williams, Mullen & Christian, Richmond, Va., on brief), for appellant.

Raymond H. Strople, Portsmouth, Va. (Willard J. Moody, Bernard, Miller & Moody, McMurran & Miller, Portsmouth, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WIDENER, Circuit Judge, and HALL, District Judge.*

* United States District Judge, Southern District of West Virginia, sitting by designation.

WIDENER, Circuit Judge:

The plaintiff, an employee of the defendant, Richmond, Fredericksburg and Potomac Railroad Company, Inc. (RF&P), brought suit under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51 et seq., to recover damages for injuries sustained in the course of his employment. The jury returned a verdict of $110,500 for the plaintiff. The district court denied motions for a new trial or, in the alternative, a motion to alter or amend the judgment and for a judgment notwithstanding the verdict, and entered judgment for the full amount. From this judgment, the defendant appeals.

The principal point raised on appeal is that the verdict is excessive. We affirm.

The plaintiff was a brakeman with the RF&P. On September 22, 1971, he was working on a local freight train between Fredericksburg and Richmond. While stepping off of the slow moving engine to throw a switch, he stepped on some loose round gravel and slipped, jamming his right wrist as he fell forward. The gravel apparently came from a nearby loading chute. The plaintiff, without immediate medical treatment, continued with the train back to Richmond. He was there taken to a hospital, where examination by a physician disclosed that he had suffered a severe comminuted fracture of the distal right radius which extended into the joint.

The medical testimony showed that the plaintiff suffered a permanent 15% impairment of the upper extremity. The movement of his wrist was substantially impaired, and he continued to suffer pain. Traumatic arthritis has resulted and plaintiff's broken arm has been shortened by one-half inch. The evidence was that if the pain continued and if he continued to work as a brakeman, an operation to perform a wrist fusion would become necessary within one to four years. After such an operation, the plaintiff would no longer be able to do the work he was doing. No evidence was presented as to whether his injury would hinder other work. But there was no evidence in the record he had performed other work, or was able to.

■ The defendant claims as error that the district court used an improper standard in its consideration of whether or not to set aside the verdict as to damages and grant a new trial, and that the proper standard is set out in *Williams v. Nichols*, 266 F.2d 389 (4th Cir. 1959). In that case, we held that a trial court in ruling on a motion for a new trial must consider the motion "according to the analysis and appraisal by the *trial court* of the weight of all the evidence . . . .," (emphasis in original), *Williams*, p. 393, and not consider the evidence in the light most favorable to the plaintiff. The verdict should be set aside if it is against the clear weight of the evidence or would result in a miscarriage of justice. The defendant urges that the district court did not follow the standard of *Williams* but instead looked at the evidence as it could be construed most favorably to the plaintiff.

The district court, in its oral opinion and order denying the motion, stated that it understood the jury was not free to "give just what they want" and that it should grant the motion when satisfied by "more than just a suspicion that justice has not been served." The court weighed all the evidence, and other pertinent factors, *Williams*, p. 393, and found that it was reasonable to assume that the jury adopted the plaintiff's evidence and reasonable inferences therefrom. The defendant had called no witnesses and offered no evidence except a stipulation as to wages, and the trial court noted the noncontroversial nature of the defense as to damages. The court concluded that the judgment was "generous" but not "inordinate or outrageous," and relying on *Grunenthal v. Long Island Ry. Co.*, 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968), for the test to be applied, entered judgment for the full amount found by the jury.

*Grunenthal* was an FELA case where, as here, the trial court denied defendant's motion to set aside the verdict as

being excessive. The Court of Appeals reversed, and was itself reversed by the Supreme Court which held that the trial court had not abused its discretion. The trial court there had indulged " 'in a fairly accurate estimate of factors to which the jury gave attention, and favorable response, in order to arrive at the verdict announced.' " *Grunenthal*, p. 158, 89 S.Ct. p. 333. It had concluded that the jury may well have adopted the plaintiff's contentions in their entirety and so found the verdict was not outrageous or unreasonable., Twice in the opinion the Supreme Court said, as to loss of future earnings, that, since there was support in the record for the trial court's view that the jury might properly have found the verdict it returned, its action should not have been disturbed, and the court stated: "We conclude that the trial judge did not abuse his discretion in finding 'nothing untoward, inordinate, unreasonable, or outrageous— nothing indicative of a runaway jury or one that lost its head.' " *Grunenthal*, at p. 160, 89 S.Ct. at 334.

■ Thus, *Williams*, although it may not have been overruled, should be read in the light of *Grunenthal*. As so read, we hold that the district court did not abuse its discretion in ruling on the motion for a new trial. It considered the evidence and reasonable inferences therefrom, and concluded that the jury could properly have returned the verdict that it did.

■ The defendant also argues that, even if the trial court applied the correct standard, it abused its discretion in denying the motion, claiming the record does not support the amount arrived at by the jury. The parties stipulated that the average weekly wage of the plaintiff prior to the accident was $195.39. The plaintiff, without contradiction, testified at the trial that he was then making $50 per day. The evidence was that the plaintiff missed twenty-one weeks of work while recovering from his injury, plus an additional two or three days aft-

er returning to the job. The medical evidence was that if the plaintiff continued to work as he then was he would have to have a wrist fusion in one to five years, after which he would be unable to work as a brakeman. A wrist fusion is an operation which "obliterate[s]" the joint at the wrist. The pain ceases after that, but the wrist will not bend. Plaintiff was 54 years old at the time of the injury. He continued to suffer pain from the injury and suffered a permanent 15% disability of the upper extremity. Also to be remembered is his traumatic arthritis and shortening of the arm. Although there was evidence that the plaintiff was qualified as a conductor, and no evidence that he would be disabled from performing the duties of a conductor after a wrist fusion, there was no evidence showing the frequency, if any, with which he had worked as conductor, or the likelihood, if any, of his working as a conductor in the future frequently enough to earn wages of any consequence as such. Absent such evidence, and based on the plaintiff's testimony that he was working as a brakeman at the time of the accident, and had been since, the jury would be entitled to draw the inference that he would be continuing to work as a brakeman. He had not worked as a conductor in the past. The record would support a finding that the plaintiff was earning at least $13,000 per year at that time. A more plausible inference is that he was earning $15,600 per year for the uncontradicted evidence shows he worked six days a week. He was 54 years old and could have, without the injury complained of, expected to work for an additional eleven years. His life expectancy, of course, is somewhat longer, 22 years. Based on the medical testimony, the jury very justifiably could have found that he would be unable to work after one more year, leaving ten years for which he was entitled to be compensated, a gross sum of at least $130,000 and more reasonably $156,000.

The defendant did not present any evidence as to the present value of the plaintiff's future income; neither did it

offer instructions on the subject. On appeal, it now argues that the present value of the expected future income is relevant in determining whether the judgment is excessive. However, even if we assume that it is correct in its assertion that the jury should have taken into account a discounted annuity value of any earnings without the point being urged, or evidence or instructions being offered, and that the omission is plain error, which is doubtful at best, its position is not improved. Based on 6% interest, the present value of an annuity of $13,000 per year for ten years, is $95,681.30. Plaintiff had lost wages of $3,812.41, for a total of $99,493.71.[1] The difference between this total and the judgment of $110,500 is well within the range a jury could find as compensation for pain and suffering and other items of damages. As the district court concluded, the award is generous, but not inordinate or outrageous. We thus hold that there was no abuse of discretion by the district court in refusing to set aside the verdict.

As to the remaining assignments of error, we are of opinion the evidence was sufficient to support the verdict of negligence, and there was no reversible error in the instructions to the jury concerning the duty of the railway to inspect for dangerous conditions.

The judgment of the district court is accordingly

*Affirmed.*

---

1. The annuity value used is from the standard discount tables which may be found in 1 CCH *Fed.Est. & Gift Tax Rep.* 1467. We realize that the actual purchase of an annuity for 10 years beginning one year later for a man 54 years old may be slightly less. But also to be considered is that an annuity of $15,600 annually, rather than $13,000, would increase the present value of the annuity by 20%, making that $114,817.56.