**Walter Harris NIX, Plaintiff-Appellee,**

v.

**KANSAS CITY SOUTHERN RAILWAY COMPANY, Defendant-Appellant.**

**A.L. STEIFER, III, Plaintiff-Appellee,**

v.

**KANSAS CITY SOUTHERN RAILWAY COMPANY, Defendant-Appellant.**

**Nos. 84–2721, 84–2722.**

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1985.

Mehaffy, Weber, Keith & Gonsoulin, Daniel V. Flatten, Beaumont, Tex., Mehaffy, Weber, Keith & Gonsoulin, Brian R. Davis, Austin, Tex., Wheeler, Gooding & Dodson, William C. Gooding, Texarkana, Tex., for defendant-appellant.

Lovelace & Thompson, Inc., Joe B. Lovelace, Linden, Tex., for plaintiff-appellee W. Nix.

Charles T. Attaway, Texarkana, Tex., for plaintiff-appellee A. Steifer.

Before GARWOOD, HIGGINBOTHAM and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge.

In this FELA case, we conclude that the district court erroneously instructed the jury to find the defendant "at least one percent" negligent for the railroad accident from which the claim arose. Accordingly, we reverse and remand for a new trial.

I

On November 16, 1981, the plaintiffs, along with two other men named Geiman and Phillips, were serving as crew members on a train operated by the defendant KCS. The crew was assigned to switch out a train of cars at a local paper mill and bring it about twelve miles north to the railroad's Texarkana Yard. About two miles north of the mill, the train crossed a trestle, rounded a curve, and collided with a large KCS track maintenance machine.

The plaintiffs sued under the Federal Employers' Liability Act, seeking damages for injuries sustained in the accident. The plaintiffs' principal theory was that KCS

was negligent in failing to warn them about the presence of the track maintenance machine; the complaint also alleged that the train's brakes were faulty, but this was not supported at trial. The railroad's defenses were that it had no duty to warn the plaintiffs about the maintenance machine and that the plaintiffs were negligent because they failed to maintain a proper lookout, were travelling at an excessive speed, and did not timely apply the brakes.

It is undisputed that the railroad has undertaken to warn train crews about maintenance activity taking place on track lying outside, but not inside, the yard limits. It is also agreed that the maximum permitted speed inside the yard limits is either 20 m.p.h. or a speed within which the train can be stopped within one-half of an assured safe distance, whichever is less; outside the yard limits, the maximum permitted speed is 25 m.p.h. The site of the accident was inside the yard limits shortly before the accident 'and outside the limits shortly afterwards; whether the yard limits had already been moved at the time of the accident was disputed at trial.

At the conclusion of the trial the district court instructed the jury that, as a matter of law, the accident had occurred outside the yard limits; that KCS therefore owed the plaintiffs a duty to warn them of the maintenance machine's presence; and that the railroad's admitted failure to issue such a warning constituted "at least one percent" causal negligence. The court also instructed the jury that the plaintiffs were "at least one percent" negligent in failing to keep a proper lookout and that the question of faulty brakes or improper application of the brakes was no longer an issue in the case.

The jury, which returned with substantial findings of damages as to both plaintiffs, found that Nix had been ten percent contributorily negligent and that Steifer had been five percent contributorily negligent. The defendant's motions for a new trial were denied. On appeal, KCS challenges both the jury instructions and the amount of damages awarded by the jury.

## II

The defendant's principal argument on appeal is that the district court erred in directing a verdict on the issue of the location of the yard limits. We agree.

### –1–

Six witnesses testified on the yard limits issue. Four of these were called by the plaintiffs. Plaintiff Steifer testified that on the day of the accident, the yard limit signs had already been moved to about five miles north of the accident site. Crew member Phillips testified that the "actual physical yard limits" were at milepost "492.2," which is north of the accident site. Crew member Geiman, who was called as plaintiffs' witness, testified on cross-examination that the trackside yard limit sign had been moved north of the accident site, but he also appeared to concede that general orders or train orders, not trackside signs, control the boundaries of the Yard. Plaintiff Nix testified that the trackside sign had been moved to mile post 492.2. Roy Baughn, the operator of the track maintenance machine involved in the collision that gave rise to this case, was called by the defendant; on cross-examination, he testified that the accident site was not within the yard limits at the time of the accident.

On the other hand, John L. Deveney, KCS's Vice President of Personnel in Labor Relations, testified for the defendant that yard limits can only be changed by a general order; that a general order had been issued on September 25, 1981 announcing a *pending* change in the yard limits; that the actual signs on the ground might be moved at a different time than the change officially occurred; and that the yard limit change in question did not officially take effect until November 24, 1981, when a second general order was issued.

The two general orders referred to in Deveney's testimony were submitted as exhibits by both parties. The September 25 order said: "In the near future, time and date *to be established by train order*, yard

limit signs *will be* removed and yard limits discontinued at [various locations including the one at issue in this case] ... Current Time Table No. 1 and General Order No. 13 dated January 1, 1981, *are amended* accordingly" (emphasis added). The November 24 general order simply said that "the removal and relocation of yard limit signs referred to in [the September 25 order] have been accomplished." Although neither general order appears on its face to fix the date of the change in the yard limits, Deveney testified that the November 24 order "was the operative order that was officially changing those yard limits." On cross-examination, Deveney testified that engineers of switch engines at Texarkana did not receive "train orders." This is consistent with, though it does not necessarily entail, Deveney's conclusion that the change was not effective until the issuance of the November 24 general order.

The first five witnesses seem to have focused on the physical location of the trackside signs on the day of the accident, whereas Deveney stressed the effects of the official papers that govern yard limits. None of the first five witnesses expressly contended that trackside signs, rather than general orders, control the boundaries of the Yard. The jury could have found that Vice President Deveney, who had held a great variety of responsible positions during his forty-three years with KCS, was a credible witness and that his interpretation of the general orders in question should be given greater weight than that of five lower-level employees (all of whom were involved in the accident at issue in the case) who apparently relied on the location of the trackside signs. Had the jury adopted this position, it could have found that KCS had no duty to warn the plaintiffs about the track maintenance machine and that KCS was not guilty of any negligence that contributed to the accident at issue in this case.

–2–

Our cases display some confusion about the proper standard for determining how much evidence is necessary to create a jury question when a plaintiff moves for a directed verdict or a j.n.o.v. in a FELA case. Because the result in the present case would be the same under either of the contending standards, we need not decide between those standards today.

In FELA and Jones Act cases, a directed verdict for the defendant is proper only when there is "a complete absence of probative facts" to support a contrary conclusion. *See Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946); *Ferguson v. Moore-McCormack Lines,* 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957). In other cases, this "scintilla rule" does not apply. Instead, a "reasonable man" standard is used:

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc) (footnote omitted).

It has been argued that the *Lavender v. Kurn* standard should be limited to situations in which a FELA or Jones Act *defendant* has moved for a directed verdict or j.n.o.v. and that the usual *Boeing* standard should be applied when a Jones Act or FELA plaintiff wishes to have an issue taken from the jury. *See, e.g., Springborn v. American Commercial Barge Lines,* 767 F.2d 89 (5th Cir.1985) (dictum); *Allen v. Seacoast Prods., Inc.,* 623 F.2d 355 (5th Cir.1980) (dictum). This argument, however, has also been sharply questioned and it appears to conflict with our settled practice. *See Springborn, supra,* (Garwood, J., concurring); *Robin v. Wilson Bros. Drilling,* 719 F.2d 96, 98 n. 2 (5th Cir.1983); *Fontenot v. Teledyne Movible Offshore, Inc.,* 714 F.2d 17, 19 (5th Cir.1983); *Campbell v. Seacoast Prods., Inc.,* 581 F.2d 98, 99 n. 2 (5th Cir.1978); *McBride v. Loffland Bros. Co.,* 422 F.2d 363, 365 (5th Cir.1970).

Under the rule of *Lavender v. Kurn,* the jury charge in the case at bar would undoubtedly have been erroneous: there was probative evidence favoring the defendant on the yard limits issue. Even under the *Boeing* standard, however, we would conclude that the question should have gone to the jury. The jurors could have found that Deveney was a credible witness and that he was in a better position than the other five witnesses to offer an authoritative interpretation of the ambiguous general orders that were introduced into evidence. As we read the record, the facts and inferences did not point so strongly and overwhelmingly in favor of the plaintiffs' position that reasonable men could not have arrived at a contrary conclusion. Under either the *Lavender* or *Boeing* standards, therefore, the district court's jury charge was erroneous and a new trial is required.

### III

KCS also complains that the district court erred in instructing the jury not to consider evidence relating to a possible "malfunction of the brakes or improper application of the brakes." "Malfunction" was the plaintiffs', rather than the defendant's, issue. KCS, however, believes that the trial judge's "improper application" language may have led the jury to believe that he had ruled as a matter of law that the plaintiffs applied the train's brakes in a timely fashion.

When the trial judge gave this instruction, he had just finished telling the jury that, as a matter of law, the plaintiffs had failed to keep an adequate lookout before the accident and that they were at least one percent at fault for the collision. Because an inadequate lookout would have been the most likely cause of an untimely application of the brakes, we doubt that the jury was seriously misled by the judge's "improper application" language. Because we must reverse and remand for a new trial on other grounds, however, we need not and do not decide whether the portions of the jury instructions dealing with "improper application" of the train's brakes would by themselves have constituted reversible error.

KCS also complains that the trial court at one point mistakenly characterized the defendant's excessive speed defense as "the claim by the Plaintiffs that the train was going too fast." In view of our disposition of the case, we have no occasion to evaluate the prejudicial effects of this obviously inadvertent misstatement.

### IV

KCS urges that the damages awarded by the jury—$470,323.68 for Steifer and $221,393.00 for Nix—were grossly excessive under *Grunenthal v. Long Island Ry. Co.,* 393 U.S. 156, 159 & n. 4, 89 S.Ct. 331, 333 & n. 4, 21 L.Ed.2d 309 (1968), and *Perricone v. Kansas City Southern Ry.,* 630 F.2d 317, 319–20 (5th Cir.1980); KCS also contends that Steifer's award was enhanced as a result of jury prejudice engendered by his lawyer's improper remarks at trial.

Because we must in any event remand for a new trial, we pause only to make the following observations. Our review of the

record indicates that the jury resolved many doubts in the evidence in the plaintiffs' favor; this would not compel us to conclude that the verdict was grossly excessive. The record also shows that Steifer's attorney, during closing arguments, made three questionable remarks about money that was advanced by the railroad to Steifer for medical expenses. The trial judge sustained objections to all three remarks and stated in the jury's presence that the matter had nothing to do with any issue presented for the jurors' decision. Viewed in context, the three remarks would not necessarily raise an inference of prejudice sufficient to warrant our setting the verdict aside. *See Westbrook v. General Tire & Rubber Co.*, 754 F.2d 1233, 1238 (5th Cir.1985).

REVERSED and REMANDED, with instructions to conduct a new trial on all issues.