NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0189n.06
Filed: March 15, 2005

No. 03-6331

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DAVID L. ROGERS, Individually;
ANN MOSTOLLER, Trustee, of the
Bankruptcy Estate of David L. Rogers,

    Plaintiffs-Appellees,

v.

NORFOLK SOUTHERN RAILWAY
COMPANY,

    Defendant-Appellant.

_____/

On Appeal from the United
States District Court for the Eastern
District of Tennessee

BEFORE:    RYAN and COOK, Circuit Judges; BELL, District Judge.[*]

    RYAN, Circuit Judge.    The defendant, Norfolk Southern Railway Company, appeals from a final judgment entered upon a jury verdict in favor of the plaintiff, David L. Rogers, following a trial on Rogers's claims under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, and the Federal Safety Appliance Act (FSAA), 49 U.S.C. §§ 20301-20306. For the following reasons, we **AFFIRM**.

**I.**

    On August 23, 2000, Rogers and two coworkers were collecting railcars for a customer in Norfolk's Calhoun rail yard in eastern Tennessee. Rogers spotted eleven railcars he needed on the west end of a "cut" of approximately thirty railcars. According to

_____

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

Rogers, the railcars all appeared to be coupled to one another. Rogers instructed his engineer to back his engine towards the west end of the cut in order to couple with the eleven needed railcars. Before disengaging the eleven railcars, Rogers noted that the hand brake chains on the twelfth and fourteenth railcars appeared to be taught, indicating to him that the hand brakes had been fully applied by a previous crew. Confident that the remaining railcars were secure, Rogers uncoupled the eleventh railcar from the twelfth railcar and instructed his engineer to pull the line of eleven needed railcars off the holding track. After several minutes, Rogers noticed that some of the railcars they left behind were rolling and sliding toward them. He turned to run toward the moving railcars, intending to mount them and engage additional hand brakes to avoid a crash. In doing so, he slipped on some rocks and badly injured his knee. The railcars continued to roll and slammed into the line of railcars his crew had just removed.

On January 18, 2002, Rogers filed a complaint against Norfolk, seeking damages under FSAA and FELA for the injury to his knee. Rogers alleged that Norfolk was strictly liable for his injuries under FSAA because the railcars that rolled away were not equipped with "efficient hand brakes," 49 U.S.C. § 20302(a)(1)(B), and "couplers [that coupled] automatically by impact," 49 U.S.C. § 20302(a)(1)(A). Rogers also alleged that Norfolk was liable under FELA because he had suffered an "injury . . . resulting in whole or in part from the negligence of" his former employer. 45 U.S.C. § 51. After a four-day trial, the jury returned a verdict in favor of Rogers, finding that: (1) Norfolk's violation of FSAA caused damage to Rogers; (2) Norfolk's negligence under FELA caused damage to Rogers; (3) Rogers was not negligent; and (4) Rogers had proven damages totaling $2,305,165.

Norfolk subsequently filed motions for judgment as a matter of law and for a new trial, both of which were denied by the district court.  Norfolk then filed a timely notice of appeal.

## II.

## A.

Norfolk first contends that FSAA is inapplicable to this case because the railcars that rolled away were not "in use."  It has long been established that the provisions of FSAA only apply to trains and railcars that are actually "in use."  Brady v. Terminal R.R. Ass'n, 303 U.S. 10, 13 (1938).  We need not decide whether Norfolk is strictly liable under FSAA because, even assuming FSAA is inapplicable here, the jury's determination of fault based on Norfolk's negligence, which Norfolk does not appeal, is itself sufficient to affirm the district court's judgment.

The jury found that: (1) Norfolk was negligent under FELA and that such negligence was a legal cause, in whole or in part, of the damage to Rogers; and that (2) Norfolk violated the provisions of FSAA and that the violation was a legal cause, in whole or in part, of the damage to Rogers.  In its memorandum denying Norfolk's post-judgment motion for a new trial and for judgment as a matter of law, the district court explained that there was sufficient evidence from which the jury could find that Norfolk was negligent vis-à-vis its employees' failure to exercise reasonable care, either by its failure to test the security of the couplers by "stretching" the segment of railcars that rolled away, or by its failure to apply fully the hand brakes in order to prevent the railcars from moving.  In other words, the jury's finding of negligence was not based upon a determination that the hand brakes were inefficient or that the couplers failed to couple automatically by impact in violation of FSAA.  Rather, it rested upon a finding of the railroad-employer's simple negligence.  Accordingly,

because Norfolk does not appeal the jury's finding of negligence, which independently supports the jury's determination of liability, we need not decide whether Norfolk is also liable under FSAA.

**B.**

Norfolk also argues that the district court abused its discretion in admitting the testimony of David Engle as expert opinion. Engle testified that, in his opinion, Norfolk had violated FSAA because: (1) the hand brakes on the railcars that rolled away were "inefficient"; and (2) the couplers on the railcars that rolled away failed to couple automatically by impact. Contrary to Norfolk's assertion in its response to Rogers's Rule 28(j) letter, neither Engle's Rule 26 report, nor his testimony at trial, reveal that he offered any opinion as to whether Norfolk had been negligent. Thus, even assuming it was improper to admit Engle's testimony as expert opinion, the error would not require reversal because his opinion had no impact on the jury's unchallenged finding of negligence.

**C.**

Norfolk next contends that the district court erroneously instructed the jury that "loss of enjoyment of life" and "pain and suffering" were separate elements of Rogers's claim for damages. Norfolk, however, did not object to the district court's jury instructions on this basis. "'The law in this circuit generally requires a formal objection, which should in most circumstances be made both before and after the jury instructions are read to the jury.'" Preferred RX, Inc. v. Am. Prescription Plan, Inc., 46 F.3d 535, 547 (6th Cir. 1995) (citation omitted). Counsel's failure to make an objection at trial "results in a waiver of the objection advanced on appeal, and the jury verdict can be reversed only for plain error." Id. at 548. Plain error exists "where the error was obvious and prejudicial and require[s] action by the

reviewing court in the interests of justice." <u>Ivey v. Wilson</u>, 832 F.2d 950, 955 (6th Cir. 1987) (internal quotation marks and citations omitted).

We note that there is some authority outside this circuit indicating that "loss of enjoyment of life" and "pain and suffering" should not be treated as separate elements of damages in FELA cases. <u>See, e.g.</u>, <u>Dugas v. Kansas City S. Ry. Lines</u>, 473 F.2d 821, 826-27 (5th Cir. 1973). The courts consistently uphold such instructions, however, in cases brought under the Jones Act, 46 U.S.C. § 688, which is construed <u>in</u> <u>pari</u> <u>materia</u> with FELA, when there was no objection made at trial. <u>See, e.g.</u>, <u>Earl v. Bouchard Transp. Co.</u>, 917 F.2d 1320, 1325-26 (2d Cir. 1990); <u>Wood v. Diamond M. Drilling Co.</u>, 691 F.2d 1165, 1169 (5th Cir. 1982). In this case, the district court's unchallenged instructions to the jury distinguished between "loss of enjoyment of life" and "pain and suffering" in a way that tended to preclude any duplication of damages awarded by the jury. We are satisfied that the district court did not commit plain error in giving the instructions.

**D.**

Finally, Norfolk argues the district court abused its discretion by failing to order a new trial based on the excessiveness of the jury verdict. The jury awarded damages to Rogers totaling $2,305,165: $1,159,808 for future lost earning capacity, $145,357 for past lost earning capacity, $500,000 for loss of enjoyment of life, and $500,000 for pain and suffering. A jury award alleged to be excessive will be affirmed unless it is "(1) beyond the range supportable by proof or (2) so excessive as to shock the conscience, . . . or (3) the result of a mistake." <u>Leila Hosp. & Health Ctr. v. Xonics Med. Sys., Inc.</u>, 948 F.2d 271, 278 (6th Cir. 1991).

At trial, Rogers offered the expert testimony of an economist, Dr. Francis Rushing, who presented an economic analysis of the salary and benefits Rogers would have received over the expected course of his work life had he not injured his knee. The jury apparently relied heavily on Dr. Rushing's testimony, since its award for future lost earning capacity was identical to the estimate given by Dr. Rushing, a figure based on Rogers's pre-injury work life expectancy of 28 years. Dr. Rushing's estimate did not account for any future income Rogers might earn to offset his financial loss, even though Dr. Rushing testified that Rogers still possessed 10.7 years of work life expectancy despite his knee injury. In light of this testimony, Rogers's attorney conceded during closing argument that the jury should reduce Rogers's work life expectancy by 10.7 years and award Rogers only 61 percent of $1,159,808, the estimated amount of future lost earning capacity given by Dr. Rushing.

Although the jury apparently ignored counsel's request and awarded the full amount to Rogers, the award is not necessarily unsupported by the evidence or the result of a mistake. Rogers testified that as a result of his injury, he has been unable to secure employment and has been rejected by over 70 different employers, including Norfolk. In Grunenthal v. Long Island Railway Co., the defendant railroad company, like Norfolk, was sued by a former railroad employee for damages under FELA. 393 U.S. 156 (1968). The railroad argued that the jury's award for loss of future earnings was excessive. The Supreme Court disagreed:

> Although petitioner's medical witness testified that the condition of his foot would not prevent petitioner from engaging in "sedentary work," petitioner's unchallenged evidence of his unsuccessful efforts to obtain and keep jobs of that kind might reasonably have led the jury to decide that petitioner's chances of obtaining or holding any employment were most doubtful.

> Petitioner testified that his applications for work had often been turned down[.]"

Id. at 161.  Similarly, the jury here could have reasonably concluded that Rogers's award for loss of future earnings should not be reduced in light of his unsuccessful attempts to obtain employment.

Regarding the award for "loss of enjoyment of life" and "pain and suffering," Rogers offered testimony that he had undergone two knee operations, was in constant need of pain medication, and was facing a possible knee replacement surgery.  He also testified that he suffers constant pain on a daily basis, is unable to provide for his children or perform many of the ordinary activities of parenthood, and is unable to sleep well.  We cannot conclude that Rogers's noneconomic damages exceed the range supported by the evidence.

We have carefully reviewed the record and find no reason to upset the jury's award of damages.  Accordingly, the district court did not abuse its discretion in denying Norfolk's motion for a new trial based on the alleged excessiveness of the jury verdict.

**III.**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.