BENJAMIN SAGLIMBENI, by CARMELA SAGLIMBENI, His Guardian ad Litem, Respondent, *v.* WEST END BREWING COMPANY, Appellant.

CARMELA SAGLIMBENI, Respondent, *v.* WEST END BREWING COMPANY, Appellant.

Third Department, July 7, 1948.

*Kernan & Kernan,* attorneys (*Warnick J. Kernan* and *James S. Kernan, Jr.,* of counsel), for appellant.

*Harold E. Blodgett* for respondents.

FOSTER, J. Defendant West End Brewing Company appeals from two judgments in favor of the plaintiffs. The action of the infant plaintiff was brought to recover damages for personal injuries caused by the breaking of a bottle of beer sold and distributed by the defendant. As a result of the accident the infant plaintiff sustained a very serious injury to one of his eyes. The accident happened on July 28, 1942, in a public tavern in which he was then employed. At the time he was engaged in taking bottles of beer from a case and placing them in rows on a shelf in back of the bar. The defendant manufactures beer which it bottles and delivers to retailers. It had for some time prior to the accident in question delivered bottled beer in cases to the tavern where the infant plaintiff was employed. There it was stored in the cellar and when required was brought up in cases and put on shelves back of the bar until ready to be used.

The gravamen of the actions against defendant is that of negligence. It was alleged that defendant failed to use due care in inspecting the bottles before filling; that it used bottles that were weak and defective; that it used bottles for beer containing a gas content greater than the resistant strength of the bottles; and, that it failed to exercise in general due care in the sale and manufacture of bottled beer.

No motions were made by the defendant to set aside the verdicts on the ground that the same were excessive or against

the weight of evidence, and a new trial is not asked. The sole ground of appeal is that plaintiffs failed to prove a cause of action and that defendant's motion for a nonsuit should have been granted. On the basis of this situation and as the case comes to us every reasonable inference must be drawn in favor of the plaintiffs. It must be assumed, therefore, that, as claimed by the plaintiffs, the bottle was broken by an interior explosion and without any contributing act on the part of the infant plaintiff. We must also assume as an obvious and reasonable inference that the bottle was too weak to withstand the gas pressure within. All live beer contains carbonic gas to cause foam and keep the foam up. A volume of 2.6 gas is used in bottled beer but the interior pressure varies with atmospheric temperatures, running as high, so the jury could have found, as fifty pounds to the square inch on a warm day. These facts might suggest the doctrine of *res ipsa loquitur*, but the case was not submitted on that theory, and indeed the plaintiffs make no claim that it should have been. They assert that they have proven actionable negligence against the defendant. The latter rests its case solely upon the proposition that in the manufacture and bottling of beer it followed the customary practice and usage of all breweries. This fact, it urges, absolves it from any claim of negligence, and that to hold otherwise would in effect make it an insurer.

Testimony as to the brewing and bottling of beer was given at great length. It would serve no useful purpose to review this process in detail. Suffice it to say that in the bottling of beer the product passes through six different machines — the soaking machine, washing machine, beer filling machine, crowning machine, pasteurizing machine and labeling machine. In four of these processes the bottles are subjected to pressure tests of a character designed to develop any weaknesses or defects that might break them. In addition there are three inspections for the purpose of eliminating any defective bottles. The methods thus followed and the processes used by the defendant, including the tests to which bottles were subjected and their inspection, are standard and customary in the business and identical with the practice of all modern breweries. These facts are not disputed.

However, it appears that bottles are used over and over again. Empty bottles are continually returned and refilled, and the defendant uses empty bottles of other concerns providing they are of the same size and color as its own. On the trial there was expert testimony for the plaintiffs to the effect

that this practice was a hazardous one especially in view of the fact that the internal pressure due to gas in the beer might reach as high as fifty pounds to the square inch on a warm day. While it is conceded that the use of old bottles is a standard practice with all breweries, nevertheless the jury could have found that this practice very greatly increases the hazard of exploding bottles to the public. There was expert testimony to this effect but it rests upon the common-sense view that the repeated use of bottles and the handling thereof tends to develop defects which will weaken their resistant strength. The expert for the plaintiffs characterized such a practice succinctly when he said: "The standard practice is to let the public take the risk and then to provide resources for the hazard." Again he said: "It is a hazardous thing for you to use old bottles over again until they break."

Thus, at the least reckoning, the jury had as a basis for its verdicts: first, the fact that the bottle exploded; second, the obvious and reasonable inference that it exploded because it was too weak to withstand the gas pressure within; and third, the defendant used old bottles in great quantities for continuous refilling, and that such a practice was hazardous because constant handling tends to develop defects which will weaken their resistant strength. Defendant's sole answer is that because it followed a standard practice in using old bottles, and also because its methods of testing and inspection conformed to common usage, that no lack of reasonable care was shown. In charging the jury the court said in effect that proof of standard practice was not necessarily conclusive on the issue of negligence; that it was the defendant's duty to exercise the care that a reasonably prudent and careful person would exercise. We think the charge correctly stated the law. Common usage is a test of negligence to be considered by the jury but not a conclusive test. Such evidence is to be received for what it may be worth in view of all the circumstances of a particular case (*Shannahan* v. *Empire Engineering Corp.*, 204 N. Y. 543). It was for the jury to say, even though usage and custom were shown, whether the use of old bottles under the circumstances disclosed was hazardous to the public and, therefore, negligent. If the hazard remained after standard tests were made the jury was not bound to find that such tests were conclusive proof of due care. It would be a strange doctrine indeed, to admit the hazard, created for economic reasons, and then say as a matter of law that the public must bear the risk.

We are not unmindful that plaintiffs have not proven with exactitude that the bottle in question was an old bottle. However, the jury could find from the testimony that practically all of the bottles in use at the time were old bottles; and that new bottles were kept in reserve. Moreover, it appears from the testimony that new bottles are guaranteed by the manufacturer to withstand a pressure of from 175 to 200 pounds. The jury, therefore, could well have found that the bottle in question was not a new bottle for no one claims the gas pressure from beer amounted to such figures.

Cases cited by defendant to support its theory of nonliability by virtue of following custom are distinguishable on the facts from the present case.

The judgments should be affirmed, with costs.

HEFFERNAN and BREWSTER, JJ., concur; HILL, P. J., and DEYO, J., dissent.

Judgments affirmed, with costs.