Mary KANE, as Administratrix of the goods, chattels and credits of Edward Kane, Deceased, Appellant,

v.

BRANCH MOTOR EXPRESS COM-PANY, Appellee.

No. 254, Docket 26204.

United States Court of Appeals Second Circuit.

Argued Feb. 16, 1961.

Decided May 23, 1961.

Chester A. Hahn, New York City (Sylvia Miller, New York City, on the brief), for appellant.

John Nielsen, New York City (John P. Smith, New York City, on the brief), for appellee.

504

Before LUMBARD, Chief Judge, and CLARK and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Plaintiff's decedent, Edward Kane, was employed as a "platform man" for St. Johnsbury Trucking Company, an interstate freight common carrier. His duties were to unload trucks and trailers of that company at its New York City terminal. Defendant Branch Motor Express Company, is also a common carrier engaged in the hauling of interstate freight. Pursuant to a Trailer Interchange Contract between the two carriers, Branch delivered to St. Johnsbury on February 5, 1957 a semi-trailer #3062, over which complete control and supervision passed at that time, under the terms of the agreement, to St. Johnsbury. The trailer was sent on a freight run to Portland, Maine and returned to St. Johnsbury's New York terminal on February 9. It was at that time parked on the roof of the terminal to await subsequent unloading.

On the night of February 10–11 Kane was working a late night shift on the freight platform. The Branch trailer #3062 was brought down from the roof and backed into an unloading bay shortly after midnight. The trailer was uncoupled from the "switching tractor" which had brought it down; pieces of wood as wheel chocks were placed in front of the left rear tandem wheels and between the two sets of wheels on the right side. About 3:00 a. m., Kane and one Arthur Adrian began unloading the trailer. The work proceeded by means of either a hand cart or a motorized "hi-lo" depending upon the size and weight of the packages being unloaded.

The evidence is uncontradicted that the floor of the trailer was higher than the platform. Testimony of various witnesses, however, placed the gap between two and six inches. The court below adopted the latter figure, a finding for which there is ample support in the record. Because of the "gap" a steel ramp was employed to enable Kane, operating the hi-lo, to climb up into the trailer bed. At 7:15 a. m., after nine such previous trips, Kane and the hi-lo were climbing the ramp to unload the last crate. At this juncture, the trailer started rolling away from the platform; the front wheels of the hi-lo dropped off the edge of the ramp causing the machine to flip completely over on its back. Kane, trapped in the hi-lo, was killed almost instantly.

A jury having been waived, the case was tried to the court, Herlands, J. Plaintiff proceeded below on two theories. She claimed that Branch failed to fulfill safety requirements promulgated by the Interstate Commerce Commission and therefore negligently caused Kane's death. Her second cause of action was based on a common law negligence theory. Defendant contended that the ICC regulations were meant to apply only in an "on-the-road" situation and not while the trailer was being unloaded—and that those Regulations, even if applicable, did not require any kind of effective parking brakes on a semi-trailer. Branch also denied any common law negligence. The trial court found that the regulations were applicable to terminal unloading. In this it was clearly correct. Joe D. Hughes, Inc., 23 MCC 563, 564 (1940). It held, however, that they did not require effective braking mechanism of any kind for a parked trailer. Judge Herlands also found against plaintiff on the common law count.

Appellant argues that the court below gave too little weight to the general provisions of the ICC Regulations requiring "operative" brakes "acting on all wheels," Title 49, C.F.R. §§ 193.42, 193.48, and that the District Court erroneously read sections 193.40, 193.41 and 193.43 as dispensing with the necessity for providing *any* effective braking system for an uncoupled, parked trailer save for a fifteen minute emergency breakaway requirement specified in § 193.43. Although the question is not free from doubt, we agree with appellant that the trial court erred in this finding.

§ 193.42 provides, with exceptions not here relevant, that "Every motor vehicle shall be equipped with brakes acting on all wheels \* \* \*". This general requirement that all wheels of all vehicles be "equipped" with brakes is further strengthened by § 193.48's demand that "All brakes with which motor vehicles are equipped shall be operative at all times \* \* \*".

The foregoing provisions set out in broad and sweeping strokes the clear concern of the Interstate Commerce Commission with the necessity for an adequate, always operative, braking system on interstate common carriers. The desirability of—indeed, the absolute need for—maintenance of the most stringent standards governing brakes on these heavy, potential rolling killers, in the interests of safety, is only too evident. Interpretation of ICC safety regulations must be approached with these considerations always foremost in mind.

Taken in its entirety, that subpart of the Regulations dealing with the brakes on carriers, §§ 193.40–193.52, is, regrettably, not nearly so clear as it might be. The aforecited provisions calling for operative brakes at all times apply to all "motor vehicles," which category includes semi-trailers such as the one involved in the instant case. 49 C.F.R. § 190.1. Section 193.40, however, provides that

"Every bus, truck, truck-tractor, and combination of motor vehicles \* \* \* shall be equipped with brakes adequate to control the movement of, and to stop and to hold,

such vehicle or combination of vehicles. Two separate means of brake application shall be provided. One such means shall be a parking brake \* \* \*".

That section is followed by § 193.41, setting down more specific requirements for parking brakes. The latter section literally applies to "every singly driven motor vehicle and every combination of motor vehicles."

Another section pointed to by defendant is § 193.43. That section deals with the emergency breakaway situation— where tractor and trailer have come uncoupled while in motion on the road. It requires that there be an emergency braking system on the trailer, independent of the tractor for its operation, which will remain effective at least 15 minutes.

Interpreting these sections singly, the trial court concluded that sections 193.40 and 193.41, by specifically enumerating those types of vehicles which must be equipped with parking brakes, excluding mention of trailers, obviated the necessity of furnishing semi-trailers with parking brakes. Judge Herlands further reasoned that if § 193.43 demanded only that a trailer's air brakes hold at least fifteen minutes in case of a breakaway, there was no flat requirement that air brakes be completely leak free so as to qualify as an effective, permanent parking brake.[1] The court then combined these interpretations to hold that no parking brake system of any kind is required by the ICC for trailers.

The individual interpretations given the sections in question by the trial

---

1. Plaintiff, in addition to relying upon §§ 193.42 and 193.48, also leaned in part on § 193.46:

"*Brake Tubing and Hose Connections.* All connections for air \* \* \* braking systems shall:

\*     \*     \*     \*     \*

"(b) Be designed, constructed, and installed so as to insure, when properly connected, an attachment free of leaks, constrictions, or other defects."

Judge Herlands held, however, that this section did not apply to "valves" where, the evidence indicated, most leakage oc-

curred. The Court held that § 193.46 applied only to "fittings" (brake tubing and hose connection) and that there was no evidence that the system in question was anything but airtight in those particulars. Expert testimony indicated that the slow leakage present in the braking system of trailer #3062 emanated from two check valves, and that the rate of leakage was well within "tolerances" set by the manufacturer and adopted apparently by the trucking industry.

judge might be considered reasonable in isolation.[2] When the court takes these two separate threads from specific safety requirements, however, and joins them in such a way as to subvert the obvious policy of the administrative safety regulations, the overall interpretation must be rejected.

■■ The final result of the lower court's careful interpretation of these regulations is completely to strip *all* braking requirements from parked trailers. The parking brake sections may not specifically *impose* such a braking system as a *necessity;* similarly, § 193.43 seemingly fails to *require* an absolutely leak free air system. These individual regulations however, dealing *only* with specific segments of the overall safety problem, do not take away any force from the general requirement that all motor vehicles have operative brakes at all times. The most that can be said for the sections relied upon by defendant is that they fail to prescribe any specific type of braking system to cope with the problem of parked trailers. To satisfy the general requirements of sections 193.42 and 193.48, however, carriers must equip their trailers *either* with mechanical parking brakes *or* with a truly leak proof compressed air system— or with any other braking system adequate to satisfy those demands.

The woeful inadequacy of random "chocking" as a safety measure is graphically illustrated in this case. Branch's theory of defense was predicated partially on the contention that Kane's hi-lo, coming off the ramp, exerted a strong thrust on the trailer causing it to climb the chocks and roll away from the platform.[3] Taking this reasonable explanation of the accident as valid, it only points out more clearly the necessity for a truly adequate parking brake system. Varying heights of loading platforms and trailer bodies apparently make the situation resulting in the present accident not uncommon. In light of this, the interests of safety demand adequate brakes on trailers as well as on self-propelled vehicles. In considering the provisions of the ICC regulations, that interpretation must be adopted which best effectuates the aims and policies of that body.

The interpretation of the ICC regulations is as we have said, not entirely free from doubt. Concentration on this issue, however, has unfortunately tended to minimize the alternative ground of plaintiff's claim. Judge Herlands held that dismissal of the cause of action based upon the regulations "in large measure * * * disposes of plaintiff's common law negligence theory." 183 F.Supp. 919, 926. Finding no evidence that the air brakes were "defective," that other mechanical parking devices were provided for trailers in the industry, or that it was a custom of the trade to equip trailers with adequate "chocks," the trial judge directed that the negligence count be dismissed.

■ When a judge sitting without a jury passes on the issue of negligence, his conclusion is freely reviewable on appeal and is not to be tested by the "clearly erroneous" standard of Rule 52(a), F.R.Civ.P., 28 U.S.C.A. Romero v. Garcia & Diaz, Inc., 2 Cir., 1961, 286 F.2d 347, 355, certiorari denied 81 S.Ct. 905, and authorities there cited. This is because a Court of Appeals cannot determine, when there has been no charge to

---

2. There is a question, however, as to whether §§ 193.40 and 193.41 permit carriers to operate trailers without a separate parking brake system. Although the specific list of "motor vehicles" enumerated omits any specific mention of "trailers," § 192.20 confuses the picture substantially by providing,

"*No motor vehicle* shall be left unattended until the parking brake has been securely set *and* all reasonable precautions have been taken to prevent the movement of such vehicle * * *".

3. Testimony at trial, by a mechanical engineer, was to the effect that less than 1600 foot-pounds of force would be required to move the trailer over the chocks. The same engineer estimated that the hi-lo could generate a forward thrust in excess of 4000 foot-pounds.

the jury, whether the correct standard of due care has been applied to the facts of the case. This principle is, of course, equally applicable whether the trial judge finds negligence or whether he exonerates the defendant. In either case, the Court of Appeals must decide whether the finding can stand if tested by a properly formulated standard of care.

██ Even if the regulations by inadvertence or design did not require parking brakes on detached semi-trailers, the elements of common law negligence plainly are established by the evidence here,—according to the subordinate facts as found by the court below. The air had leaked from the brake system during the course of unloading, and the brakes were eventually not in application, as Branch admittedly had reason to expect. The entrance of a hi-lo into a trailer whose bed stands above the platform level, as Branch could reasonably expect, would naturally and did here cause movement of the trailer from the platform, with great danger to the hi-lo operator. The brake system initially held the trailer firm, even with inadequate chocking. As the air leaked, the danger of movement increased. This was a defect not apparent to casual observation.

The court found that there was no evidence that provision of adequate chocks or mechanical parking brakes for trailers was a practice of the industry or a necessity. It is true that it is not shown to be a general practice in the industry, although there is some mention in the evidence of the availability of both. Practice of the industry is not however the sole test of due care; it is merely a fair yardstick of the very least which all those engaged in the trade must do. Under neither Federal law nor the law of New York is a defendant relieved of liability for damage done by him if he proves only that he has lived up to the usual measure of caution practiced in the industry. The T. J. Hooper, 2 Cir., 1932, 60 F.2d 737, certiorari denied Eastern Transport Co. v. Northern Barge Corp.,

287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571; Saglimbeni v. West End Brewing Co., 3d Dept. 1948, 274 App.Div. 201, 80 N.Y.S.2d 635, affirmed 1949, 298 N.Y. 875, 84 N.E.2d 638. Where the danger from a hidden defect is great and the risk of injury or death serious, one who furnishes a vehicle for use is liable for failure to use reasonable care to make the vehicle safe for the expected use or to warn of the extent of the danger. Here Branch did nothing either to enable the vehicle to be held stationary or to warn of the means necessary to accomplish this.

Defendant relies on Campo v. Scofield, 1950, 301 N.Y. 468, 95 N.E.2d 802 and Messina v. Clark Equipment Co., 2 Cir., 1959, 263 F.2d 291, as establishing that New York requires it only to warn of latent defects and concealed dangers. It argues that St. Johnsbury knew of the danger and that decedent, whose hi-lo bore a sign, "Be sure trailer is chocked," and who inquired of St. Johnsbury's driver whether it was chocked, was on actual notice. This, however, falls short of notice by defendant as to the lack of any effective parking brakes. Chocking even where the trailer is equipped with brakes, during unloading operations would seem an ordinary additional safety measure, and the type of chocking available and used by St. Johnsbury was in fact inadequate here in the absence of effective parking brakes.

Even if New York does hold that the only duty under MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, is warning of latent defects (as to which see Clark, C. J. dissenting in Messina v. Clark Equipment Co., supra, 263 F.2d at page 293), a finding that such a duty had been met would be clearly erroneous on the record here.

██ On both grounds Branch should have been held negligent. The judgment must therefore be reversed and the case remanded for trial of the issues of proximate cause, contributory negligence and, if necessary, damages.

LUMBARD, Chief Judge (concurring).

The result reached by my brethren in this case is one with which I fully agree, but I can concur in only so much of their reasoning as relates to the claim based on common law negligence. In my opinion, the careful analysis of the Interstate Commerce Commission's Safety Regulations set forth in Judge Herlands' opinion, 183 F.Supp. 919, is entirely correct. I would hold that the regulations neither expressly nor impliedly required of the defendant that it provide airtight brakes for its trailer or equip it with a device that would keep it stationary for such time as it was being loaded or unloaded—in this case, for seven hours.