John ANELLO and Phyllis Anello,
Plaintiffs-Appellees,

v.

MURPHY MOTOR FREIGHT LINES,
INC., and Maislin Brothers Transport
Limited, Defendants-Appellants,

and

Harrison Radiator Division of General
Motors Corporation, Defendant.

MURPHY MOTOR FREIGHT LINES,
INC., Third-Party Plaintiff,

v.

MAISLIN BROTHERS TRANSPORT
LIMITED et al., Third-Party
Defendants.

MAISLIN BROTHERS TRANSPORT
LIMITED, Third-Party Plaintiff,

v.

GOOD'S TRANSPORTATION
SERVICE, Third-Party
Defendant-Appellant,

and

Harrison Radiator Division of General
Motors Corporation, and Murphy Mo-
tor Freight Lines, Inc., Third-Party
Defendants.

Nos. 6, 7, 18, Dockets 73–2156,
74–1445, 73–2274.

United States Court of Appeals,
Second Circuit.

Argued Oct. 22, 1974.

Decided June 18, 1975.

George T. Ganey, Jr., Buffalo, N. Y. (Cohen, Lombardo, Blewett, Fisher & Hite, Buffalo, N. Y., on the brief), for plaintiffs-appellees.

Edward J. O'Connor, Buffalo, N. Y. (Miller, Bouvier, O'Connor & Cegielski, Buffalo, N. Y., on the brief), for defendant-appellant Murphy Motor Freight Lines, Inc.

James S. McAskill, Buffalo, N. Y. (Ohlin, Damon, Morey, Sawyer & Moot, Buffalo, N. Y., on the brief), for defendant-appellant Maislin Brothers Transport Limited.

John J. Heffernan, Buffalo, N. Y. (Palmer, Heffernan, Wickser & Beyer, Buffalo, N. Y., on the brief), for third-party defendant-appellant Good's Transportation Service.

Before MOORE, OAKES and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

This appeal involves the consequences of a nail protruding from the floor of a trailer that punctured the right foot of John Anello while he was employed as a shipping foreman at the plant of the Fedders Corporation (Fedders) in Buffalo, New York, on October 29, 1968.

After a jury trial in the Western District of New York before John T. Curtin, *Chief Judge,* a judgment was entered on March 20, 1973 awarding John Anello $55,000 damages for his personal injuries and awarding his wife, Phyllis Anello, $6,500 on her derivative claim for loss of consortium and companionship. The judgment in this diversity action was entered against three defendants: Murphy Motor Freight Lines, Inc. (Murphy), Maislin Brothers Transport Limited (Maislin), and Good's Transportation Service (Good's).[1] Each of the the three defendants appeals from the judgment and from the order of the district court entered June 26, 1973 denying their motions to set aside the verdict, for judgment n. o. v., or for a new trial.

The essential questions on appeal involve the issues of liability on the part of Good's and Maislin; the propriety of the court's submission to the jury of John Anello's claim of loss of future earnings and impairment of earning capacity; and whether the verdicts in favor of both plaintiffs are excessive.

We affirm.

I.

In order to focus upon the asserted liability of the defendants, it is necessary to back up a bit from the occurrence of the accident on October 29, 1968.

On October 17 the trailer involved, which was owned by Murphy and was being hauled by a Murphy tractor, left Chicago with a cargo bound for Quebec, Canada. Murphy did not have authority to operate in Canada. It had an interchange agreement with Maislin, an au-

---

1. The jury by its verdict in the form of answers to special interrogatories found that the accident and John Anello's injuries were caused by negligence on the part of Murphy and Maislin, there being no contributory negligence.

The jury found no negligence on the part of a third defendant, Harrison Radiator Division of General Motors Corporation (Harrison).

After the return of the jury verdict, counsel for the respective parties stipulated, in lieu of submitting to the jury the question of negligence on the part of Good's, the third-party defendant, and the question of apportionment of damages among the defendants, that Murphy, Maislin and Good's would divide equally between them the award of damages in favor of plaintiffs, each defendant reserving its rights on appeal.

thorized carrier in the Quebec area. The trailer therefore was switched to Maislin in Buffalo on October 22. Maislin made the Quebec delivery. It then took on a load of brass stripping in Montreal for delivery to Harrison in Lockport, New York. This load was shored by nailing 2 × 4s to the floor of the trailer. Since Maislin had no authority to operate in Lockport but had a concurrence agreement with Good's which was authorized to operate in Lockport, the loaded trailer was left at the Maislin terminal in Buffalo. There on October 25 the trailer was transferred to Good's which delivered it to Harrison in Lockport. Good's then returned the empty trailer to the Maislin terminal in Buffalo on October 28. On the same day Murphy picked up its trailer and spotted it for loading at the dock of the Fedders plant in Buffalo.

The sequence of control of the trailer therefore was Murphy to Maislin to Good's to Maislin to Murphy.

Anello sustained his injury on the morning of October 29 while he was engaged in helping to load the trailer referred to above. As a shipping foreman employed by Fedders, he was participating in the loading of automobile radiators on the trailer. While walking on the floor of the trailer, his right foot became impaled on the head of a nail protruding through the floor of the trailer. The nail pierced his shoe and punctured his foot. With the help of a fellow employee, his foot was pulled free and the shoe came off.

On appeal, Murphy understandably does not challenge the jury finding that it was negligent. It owned the trailer and had spotted it at the Fedders dock for loading where the accident occurred.

Maislin and Good's, however, contend that the district court erred in charging the jury on the issue of liability. They agree that the court properly charged that one who furnishes a trailer for use

may be held liable for failure to exercise reasonable care to make it safe for the expected use or to warn of any danger known to him or which should have been known to him which ordinarily would not be discovered by the user. *Kane* v. *Branch Motor Express Co.,* 290 F.2d 503, 507 (2 Cir. 1961). Maislin and Good's argue nevertheless that their respective duties ended when control of the trailer passed to the next carrier in sequence on an interchange receipt (Good's to Maislin, Maislin to Murphy).[2]

■ The theory underlying this contention by Maislin and Good's is essentially lack of privity of contract. They say that, since only Murphy was in privity with Fedders, only Murphy owed a duty to Anello. We disagree.

We find those cases, many of which are cited by appellants, dealing with the liability of railroads in analogous situations to be applicable here. They indicate that the carrier's liability outlined in *Kane, supra,* 290 F.2d at 507, is imposed not on the basis of breach of contract but that of joint tortfeasors. *Chicago, Rock Island & Pacific R.R. Co.* v. *Williams,* 245 F.2d 397, 401–03 (8 Cir.), *cert. denied,* 355 U.S. 855 (1957); *St. Louis-San Francisco Ry. Co.* v. *Ewan,* 26 F.2d 619, 620 (8 Cir. 1928). The doctrine of privity of contract is not applicable. *MacPherson* v. *Buick Motor Co.,* 217 N.Y. 382, 389–90, 111 N.E. 1050, 1053 (1916) (Cardozo, *J.*). The relinquishment of control and supervision of the trailer by one carrier and transfer of it to another does not exonerate the former from liability to a subsequent user. *Albanese* v. *Southern Ry. Co.,* 131 F.Supp. 307, 309 (S.D.N.Y.1955); *Bierzynski* v. *New York Central R.R. Co.,* 31 App.Div.2d 294, 297 N.Y.S.2d 457, 460–62 (4th Dept.1969), *aff'd,* 29 N.Y.2d 804, 277 N.E.2d 412, 327 N.Y.S.2d 365 (1971). Here there was good reason for the jury to infer that the nail on which Anello's foot was impaled

---

2. When a trailer is transferred from one carrier to another, employees of each carrier inspect it for damage and proper safety equipment. Their report is contained in an interchange receipt. For aught that appears, Murphy could have rejected the trailer from Maislin and Maislin could have rejected it from Good's if it had not been in proper condition.

was left in the floor of the trailer after the shoring for the brass stripping was removed in Lockport, that is, while the trailer was still in Good's possession and before it was transferred back to Maislin (and then to Murphy).

■ We hold that the questions of negligence, contributory negligence and proximate cause were correctly submitted to the jury under proper instructions and that the judgment of liability on the part of each of the appellants is adequately supported by the record.[3]

## II.

All appellants contend that the court erred in its submission to the jury of John Anello's claim of loss of future earnings and impairment of earning capacity resulting from the accident. We disagree.

At the time of the accident, Anello was earning approximately $8,800 per year at Fedders. After three separate operative procedures and approximately three months of being out of work, he returned to Fedders where he continued to work until August 1971, when he was laid off due to a decline in business. He later obtained a job at an annual wage of approximately $6,600 at the J. C. Penney department store where he was not required to take a physical examination.

3. We find no merit in the claim of error asserted by Good's in the admission of testimony by Alan Beach, an employee of Good's. Beach testified regarding a general custom in the trucking industry with respect to the responsibility for cleaning a trailer. He testified that such responsibility was that of the transferor rather than of the transferee carrier; similarly, that it was the responsibility of the delivering carrier rather than of the consignee to clean out the trailer. Evidence of such general custom and usage had a direct bearing on Good's liability for failing to clean out the trailer. Beach's testimony, moreover, was corroborated by that of an employee of Harrison.

4. Judge Curtin also summarized in his decision denying defendants' post verdict motions the uncontradicted evidence of the permanence of plaintiff's injury which of course provides the underpinning for plaintiff's claim of impairment of earning capacity:

The court carefully pointed out to the jury, in accordance with appellants' arguments, that Anello lost his job at Fedders not because of the accident, but because of a general lay-off, and that there was no evidence that he was ever refused a job because of failure to pass a physical examination. We think that Judge Curtin accurately and fairly summarized the crux of plaintiff's claim of loss of future earnings and impairment of earning capacity in his decision denying defendants' post verdict motions:

"It is always difficult to make an accurate determination of future loss because there are so many factors which enter into the calculation. Although plaintiff does not claim that the loss of his Fedders job was connected to the accident, the jury was entitled to consider his reduction in pay as some guide to what he would be able to earn in the future. Probably, if Fedders did not have a layoff, plaintiff would have been able to continue his employment at his old rate. But considerations which run between an old-time employee and his employer are not of concern when a man must seek new employment. Without question, plaintiff's ability to get about is impaired.[4] Within reasonable bounds, the jury is the body best able to make a practical judgment of how much this impairment is worth in dollars."

"The uncontradicted testimony of plaintiff's doctor was that he has a scar on the bottom of his foot, which is a permanent injury, and that the swelling in his foot will continue. The plaintiff testified that his foot swells, especially after extensive walking or standing, that it is painful and that at the end of a working day he quite often soaks it and keeps it elevated. Although plaintiff is able to be gainfully employed, it is evident that there are many tasks which he can no longer perform. How seriously his ability to make a living is impaired was for the jury to determine. Considering the testimony of plaintiff's physician alone, the court believes that it was proper for the jury to consider future damage. The uncontradicted testimony of his doctor was that he has a permanent painful injury."

There was evidence that when Anello returned to Fedders he no longer could walk around as freely as he had prior to the accident. Although Fedders kept him at the same rate of pay, the jobs assigned to him required less leg work. His new job at J. C. Penney paid him less. From this evidence the jury reasonably could infer that, although Anello was paid the same by Fedders while he continued to work there because of the "considerations which run between an old-time employee and his employer", another company, understandably not concerned with such considerations, would not pay him at as high a rate since he was not physically able to be on his feet as much as he had prior to the accident.

We hold that Anello's claim of loss of future earnings and impairment of earning capacity was correctly submitted to the jury under proper instructions and that the record adequately supports that element of the claim of damages.[5]

### III.

Finally, appellants claim that the verdicts in favor of John and Phyllis Anello were grossly excessive and contrary to the evidence. We have made a "detailed appraisal of the evidence bearing on damages". *Grunenthal* v. *Long Island R.R. Co.,* 393 U.S. 156, 159 (1968). We find no abuse of discretion by the district court in denying the post verdict motions. *Yodice* v. *Koninklijke Nederlandsche Stoomboot Maatschappij,* 471 F.2d 705, 707 (2 Cir. 1972) (per curiam), *cert. denied,* 411 U.S. 933 (1973). We

hold that it would not be a denial of justice to permit the verdicts to stand. *Dagnello* v. *Long Island R.R. Co.,* 289 F.2d 797, 806 (2 Cir. 1961).

Affirmed.

MOORE, Circuit Judge (dissenting in part):

I agree with the majority that the judgment of the district court should be affirmed with respect to the liability of all the defendants. I also agree that the award of $6,500 to Phyllis Anello for loss of consortium, while unquestionably high, is not so grossly excessive as to be set aside on appeal. However, I would order a new trial limited to the issue of John Anello's damages.

The injury sustained by Anello was undoubtedly very painful, and the evidence showed that continued soreness in the foot somewhat impairs his ability to get around and do the things he once enjoyed. Even so, an award of $55,000 seems excessive in view of the fact that Anello's lost pay and medical expenses totaled only about $2,500. But whether $55,000 is so excessive as to warrant the exercise of this court's admittedly limited power[1] to set aside a jury award is not necessary for me to decide, because in my opinion the evidence was insufficient to merit instructions to the jury on loss of future earnings and impairment of earning capacity.

John Anello returned to Fedders after sustaining his injury and continued to work there for approximately three more years. He lost his job at Fedders not as

---

**5.** We find no merit in appellants' argument that the court did not instruct the jury that impairment of earning capacity must result from defendants' negligence or fault. The court specifically instructed the jury that any diminution of earning capacity must "flow from the accident", be "connected with the accident" and "[flow] from the evidence."

We also find no merit in appellants' contention that the court erred in refusing to instruct the jury to disregard that portion of the summation by plaintiffs' counsel that inferred that John Anello had sustained an impairment of earning capacity. The gravamen of appellants'

contention, on appeal as in the district court, is that the claim of loss of future earnings and impairment of earning capacity was too speculative. For the reasons stated above, we hold that there was adequate basis in the record for such an inference.

**1.** *Mileski* v. *Long Island Rail Road Co.,* 499 F.2d 1169 (2d Cir. 1974); *Dagnello* v. *Long Island Railroad Co.,* 289 F.2d 707 (2d Cir. 1961), see *Grunenthal* v. *Long Island Railroad Co.,* 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968).

a result of his injury but apparently because of a general cutback in personnel. Thereafter, Anello experienced some difficulty obtaining work before finally finding employment with the Penney Company that paid about $6,600 a year (at Fedders he had been paid about $8,800 annually). But there is no indication that his difficulties were caused by the injury sustained to his foot or that he had ever been denied employment because of inability to pass a physical examination. In fact, Anello himself testified that he did not know the reason why he was unable to get a job.[2] Furthermore, Anello's job at Penney required more physical exertion than had previously been required of him, and, while he testified that this increased activity may have caused extra soreness in his foot, he also indicated general satisfaction with his work.[3] In short, there was no testimony that Anello could not perform his old job at Fedders, a similar position with another employer, or even work that made somewhat greater physical demands. The most that can be said is that he lost his job at Fedders, for reasons unconnected with his injury, and subsequently obtained employment at a reduced salary. This alone, in my view, is insufficient proof that his earning capacity was in any way impaired by reason of the injury. To be sure, the trial judge did, as the majority notes, instruct the jury that any diminution of earning capacity must "flow from the accident" and "be connected with the accident." But since the evidence did not permit the jury reasonably to conclude that John Anello's earning capacity had been diminished, the instruction on this point should not have been given in the first place and was quite simply an invitation to the jury to engage in speculation. *See Alexander* v. *Nash-Kelvinator Corp.,* 271 F.2d 524, 527 (2d Cir. 1963).

Accordingly, I respectfully dissent from the affirmance of the damage award to John Anello and would direct that a new trial be conducted on the issue of damages.

---

**2.** John Anello testified on cross-examination:

"[W]hen I got laid off from Fedders I just couldn't seem to get a job and I don't know what the reason was, whether my age . . . ." Appendix 32.

