**Perry PITTER, Plaintiff,**

*v.*

**METRO–NORTH COMMUTER RAILROAD, Defendant.**

**No. 10 Civ. 5679 (VM).**

United States District Court, S.D. New York.

Nov. 10, 2011.

Marc Twyman Wietzke, Law Offices of Michael Flynn, Garden City, NY, for Plaintiff.

Frank Rinaldi, Jesse Andrew Raye, Metro–North Commuter Railroad, New York, NY, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

The Court has received a motion *in limine* from defendant Metro–North Commuter Railroad ("Metro–North") pertaining to the trial in this matter, which is scheduled to begin November 21, 2011. A summary of Metro–North's requests and the Court's rulings thereon follow. Metro–North requests that the Court:

(1) Preclude, pursuant to Federal Rule of Evidence ("FRE") 402, the testimony of Matthew Byrns ("Byrns") regarding plaintiff Perry Pitter's ("Pitter") progress as an employee for Metro–North and the process by which Metro–North discharges an employee under its collective bargaining agreement ("CBA"): **DENIED;**

(2) preclude the testimony of Edmund Mantell ("Mantell") in its entirety pursuant to FRE 402: **DENIED;**

(3) exclude from evidence, pursuant to FRE 402, Pitter's exhibits 3, 4, 6, 7, 8, and 9, which are documentary exhibits concerning benefits and wages: **DENIED;**

(4) exclude from evidence the deposition of Richard Drake ("Drake"): **DENIED;**

(5) exclude from evidence a bill for Pearl Vision in the amount of $424.00: **DENIED;**

(6) exclude from evidence Pitter's Notice to Admit: **GRANTED;** and

(7) exclude from evidence Metro–North's Answer and Answer to Interrogatories: **DENIED.**

### I. TESTIMONY OF MATTHEW BYRNS

It is undisputed that prior to December 10, 2007, Metro–North employed Pitter as a trainee signalman, and that in December 2007, Metro–North withdrew Pitter's application for employment. Pitter here asserts a claim of negligence under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, for an eye injury he sustained while employed by Metro–North. The primary issue presented by Pitter's motion *in limine* is the extent to which the circumstances of Pitter's discharge from employment may be explored during trial.

Metro–North argues that Pitter seeks to improperly advance a claim of wrongful termination through the testimony of Byrns regarding the "plaintiff's progress as a trainee, as well as the process of withdrawing an application under the collective bargaining agreement." Metro–North contends that this testimony is irrelevant and would be unduly prejudicial because the FELA does not provide for claims of wrongful termination, and such claims are also precluded by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*

Pitter denies that he is seeking damages for wrongful termination. He argues that witness testimony will show that "as a result of his eye injury, [Pitter's] application was withdrawn." Stated another way, Pitter argues that testimony regarding his discharge is relevant to demonstrate consequential damages from his eye injury, in particular, loss of employment.

■■■ FRE 402 provides that relevant evidence is generally admissible. Whether Byrns's testimony is relevant to Pitter's FELA claim depends on the meaning and application of that statute. The pertinent provision of FELA states:

> Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier in commerce ... for such injury or death resulting in whole or in part from the negligence of any officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. FELA is "liberally construed," *Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994), and its language regarding causation is "as broad as could be framed." *CSX Transp., Inc. v. McBride,* — U.S. ——, ——, 131 S.Ct. 2630, 2636, 180 L.Ed.2d 637 (2011) (internal quotation marks omitted). In light of this broad language, the United States Supreme Court has interpreted FELA as prescribing a "relaxed standard of causation" that departs from the ordinary proximate cause requirement of common law negligence. *Id.,* 131 S.Ct. at 2636 (internal quotation marks omitted); *Rogers v. Mo. Pac. R.R. Co.,* 352 U.S. 500, 506–07, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). Causation is satisfied under FELA litigation if "negligence of

the employer played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers, 352 U.S. at 508, 77 S.Ct. 443; *see McBride,* 131 S.Ct. at 2636–44 (reaffirming that the *Rogers* "any part" test, and not proximate cause, governs FELA causation).

■■■ FELA's relaxed causation standard allows railroad employees injured by employer negligence to collect damages for consequential injuries, including those that might appear to be too attenuated under common law. As the Supreme Court explained in *Gallick v. Balt. & O. R. Co.,* 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963):

> It is widely held that for a defendant to be liable for consequential damages he need not foresee the particular consequences of his negligent acts: assuming the existence of a threshold tort against the person, then whatever damages flow from it are recoverable. And we have no doubt that under a statute where the tortfeasor is liable for death and injuries in [ ] which his 'negligence played any part, even the slightest,' such a tortfeasor must compensate his victim for even the improbable or unexpectedly severe consequences of his wrongful act.

*Id.* at 120 (internal citations omitted). In addition to compensation for pain and suffering, FELA allows damages for economic harms such as loss of past and future wages and impairment of earning capacity that result from the injury. *See, e.g., Grunenthal v. Long Island R.R. Co.,* 393 U.S. 156, 160–62, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968) (affirming award of damages which included past and future wages); *Anello v. Murphy Motor Freight Lines, Inc.,* 525 F.2d 276, 280 (2d Cir.1975) (injured employee's claim for loss of future earnings and impairment of earning capacity properly submitted to the jury).

■ The extent of available economic damages under FELA is less certain where, as here, the plaintiff lost his job after sustaining the alleged injury. Metro–North is correct that the FELA does not provide a remedy for wrongful discharge: "[I]n an FELA action for damages the plaintiff is not entitled to recover for wages lost solely by reason of his discharge." *Sharkey v. Penn Cent. Transp. Co.*, 493 F.2d 685, 688 (2d Cir.1974). While FELA focuses on compensating railroad workers for injuries and consequential harms, a separate statutory scheme, the RLA, "provides a comprehensive framework for the resolution of labor disputes in the railroad industry." *Atchison, Topeka & Santa Fe R.R. Co. v. Buell,* 480 U.S. 557, 562, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). The RLA compels arbitration for "minor disputes," including discharge grievances that hinge on the interpretation of collective bargaining agreements. *See Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 324, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) (holding that RLA foreclosed petitioner's wrongful discharge suit). However, despite the RLA's exclusivity in at least some discharge grievance contexts, *see id.,* the mere presence of a potential labor dispute does not foreclose injured railroad employees from pursuing damages resulting from those injuries under the FELA. *See Buell,* 480 U.S. at 565, 107 S.Ct. 1410 ("It is inconceivable that Congress intended that a worker who suffered a disabling injury would be denied recovery under the FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion.").

■ The parties' submissions to the Court do little to illuminate the expected substance of Byrns's testimony or how exactly it may fit within Pitter's case. Thus, it would be premature at this stage to preclude Byrns's testimony. Pitter argues in his Trial Brief that in December 2007, "defendant advised plaintiff that it had withdrawn his application for employment due to the injury in question." (Pl.'s Trial Br. at 4.) Byrns's testimony regarding Pitter's progress as a trainee and the withdrawal of an application for employment under the CBA might be relevant to show, or at least allow the jury to infer, that Pitter lost his job as a consequence of his injury. In light of FELA's relaxed causation standard, such testimony would be relevant pursuant to FRE 402 to show consequential damages, assuming that there is sufficient evidence indicating that Metro–North's negligence caused the injury.[1]

■ Nor does the Court find that Byrns's testimony should be precluded as irrelevant because it advances a wrongful discharge claim barred by the RLA. Pitter has not explicitly claimed wrongful discharge, but rather seeks damages for economic harms he allegedly suffered as a result of Metro–North's negligence. Such a claim falls under FELA regardless of whether Pitter could also seek an administrative remedy for wrongful discharge under the RLA. *See Pothul v. Consol. Rail Corp.*, 94 F.Supp.2d 269, 272 (N.D.N.Y. 2000) ("Because Plaintiff brings a claim pursuant to FELA to recover future lost wages and benefits related to his personal injuries rather than his termination, that

---

1. The Court recognizes that in order for the link between Pitter's injury and the withdrawal of his employment application to be relevant, Pitter must introduce evidence sufficient for a reasonable jury to conclude that Metro–North was negligent and this negligence played a part in causing Pitter's injury. If Metro–North's negligence did not contribute to Pitter's injury, under the FELA he is not entitled to damages at all, even if his injury caused the discharge.

claim is not barred ... pursuant to the RLA.").

As for Metro–North's concerns about potential prejudice or confusion arising from testimony regarding Pitter's discharge, the Court finds that any undue prejudice could be adequately counterbalanced by a limiting instruction.[2]

However, the Court cautions Pitter that its holding here does not license an end-run around the RLA. If in the course of trial it becomes apparent that witness testimony is primarily concerned with how to interpret the CBA and whether Pitter's discharge was proper under its terms, then the Court will sustain an objection as to relevance. Indeed, if Pitter's theory at trial hinges on the interpretation of the CBA, rather than on Pitter's injury and attendant economic harms, Pitter's complaint may be vulnerable to a motion to dismiss for failure to state a claim under FELA.

Accordingly, Metro–North's motion to exclude the testimony of Byrns is **DENIED**.

## II. TESTIMONY OF EDMUND MANTELL

■ Metro–North seeks to preclude in its entirety the expert testimony of Mantell regarding Pitter's lost income and benefits. In particular, Metro–North objects to Mantell's testimony to the extent that it is based on future wages lost as a result of

Pitter's "termination," rather than those resulting from any physical limitation associated with his eye injury. Metro–North argues that Pitter's deposition testimony and documentary evidence show that Pitter suffers no ongoing physical limitations as a result of his injury, and that Mantell's testimony regarding future wages should therefore be excluded pursuant to FRE 402.

■ As explained above, the FELA allows damages for economic harms such as past and future wages and impairment of earning capacity that result from injury. Assuming that Pitter can put forth evidence linking his loss of job and the resulting eight months of unemployment[3] to his injury, then Mantell's testimony about past economic harm stemming from Pitter's discharge is relevant under FRE 402. As for future wages or diminished earning capacity, the relevance of Mantell's testimony in that regard depends on the scope of the injury that Pitter can establish at trial. To sustain an award for future wages or diminished earning capacity, the plaintiff must show some ongoing physical limitation. See *Anello*, 525 F.2d at 279–80 & n. 4 (where uncontradicted evidence established permanent injury, jury was entitled to consider reduction in pay at plaintiff's new job as a guide to future wages). At this point, the Court will not venture to evaluate the evidence regarding Pitter's physical state or how it may have affected his employment prospects because that de-

**2.** *Cf. Sharkey*, 493 F.2d 685. In *Sharkey*, the plaintiff sought damages under FELA for aggravation of his post-traumatic anxiety neurosis resulting from his discharge. The Second Circuit held that "[t]he jury should have been more forcefully instructed that the fact that the plaintiff did not return to work for the railroad was not their concern in this case and that no damages for lost earnings were to be awarded." *Id.* at 688. *Sharkey* is distinguishable from the present case in that in *Sharkey*, the plaintiff claimed that his dis-

charge caused an aggravation of his illness, whereas here, Pitter is claiming that his injury caused his discharge. If Pitter provides no evidence that his injury caused his discharge, then like the plaintiff in *Sharkey*, he would not be entitled to damages for lost earnings.

**3.** Pitter asserts that he was unemployed from December 10, 2007 until October 2008, when he obtained a job as an Automated Teller Machine maintainer.

termination lies squarely with the jury. *See Rogers*, 352 U.S. at 510, 77 S.Ct. 443 ("Congress vested the power of decision in [FELA] actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury."). Metro–North's motion to exclude Mantell's testimony is therefore **DENIED.**

### III. *DOCUMENTARY EVIDENCE OF BENEFITS AND WAGES*

Metro–North seeks to exclude as irrelevant pursuant to FRE 402 various documents, including: "W–2 forms for 2007, 2008, and 2009;" "tax returns for 2008 and 2009;" "pay stubs from 180 Connect, Inc.;" "MTA Defined Benefit Retirement Program;" "ACRE (Signalman) Agreement;" and "Metro–North Summary of Employee Benefits."

For the reasons already articulated, the Court finds that these documents are relevant to establish and substantiate the degree of economic harm caused by Pitter's alleged injury. Metro–North's motion to exclude these items is **DENIED.**

### IV. *DEPOSITION TRANSCRIPT OF RICHARD DRAKE*

Pitter has informed the Court that the deposition transcript of Drake will be introduced only in the event that Drake is unable to testify in person. Metro–North's motion to exclude the transcript is therefore **DENIED** without prejudice to renew at trial.

### V. *BILL FOR PEARL VISION*

Pitter intends to introduce at trial a "Bill for Pearl Vision in the amount of $424.00." Metro–North objects that Pitter lacks foundation to introduce the bill. Adequate foundation may be established through testimony at trial. Accordingly, Metro–North's motion to exclude the bill is **DENIED** without prejudice to renew at trial.

### VI. *PITTER'S NOTICE TO ADMIT*

Metro–North moves to exclude pursuant to FRE 402 Pitter's Notice to Admit as cumulative. Since Pitter offers no opposition to this objection, the motion to exclude the Notice to Admit is **GRANTED.**

### VII. *METRO–NORTH'S ANSWER AND ANSWERS TO INTER- ROGATORIES*

Metro–North asks the Court to exclude Metro–North's Answer and its Answers to Interrogatories. These documents are admissible as party admissions under FRE 801(d)(2). *See* FRE 801(d)(2); *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 633 (2d Cir.1994). Therefore, Metro–North's motion to exclude those items is **DENIED.**

### VIII. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion *in limine* (Docket No. 12) of defendant Metro–North Commuter Railroad is **GRANTED** in part and **DENIED** in part.

**SO ORDERED.**